ered under the order, and the refusal of the defendant to accept and receive the same. And the proof upon the trial established the firm's ability at any time to deliver the flour in accordance with the terms of the order, and also the defendant's refusal to authorize it. Under the authority of the above case, therefore, no other tender was necessary, as the failure to deliver was produced by the defendant's refusal to receive, which amounts in law to an excuse of tender, even though there be no express waiver. Ogden v. Marshall, 8 N. Y. 340; Lawrence v. Miller, 86 N. Y. 131; Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362; Hunter v. Wetsell, 84 N. Y. 549; Tiffany, Sales, p. 179, and cases cited. Under the facts of this case, therefore, tender of the flour was not an essential requisite to the maintenance of the action, as the defendant by his act prevented its being done, and he is therefore alone responsible for the failure.

This brings us to a consideration of the remaining question in the case. Was it necessary that the firm should have had in their possession the flour which the defendant was entitled to receive? We have seen that they were able to obtain it, the means they had of doing so, and that the defendant was familiar with the course of business by which they obtained it. It is laid down by Mr. Benjamin, in his work on Sales, that, where there has been a breach of an executory contract of sale, "if the postponement has taken place at the buyer's request he is estopped from denying that the seller was ready and willing to deliver within the contract time." Benj. Sales, p. 664. This doctrine is supported by the authority of the English cases. Hickman v. Haynes, L. R. 10 C. P. 598; Ogle v. Earl Vane, L. R. 3 Q. B. 272. We think that its doctrine is in all respects applicable to this case. At the time when the defendant should have taken the flour, the firm was able and ready to deliver it. That it was not then delivered was the fault of the defendant. As he prevented the delivery in accordance with the terms of the contract, we think that it is a salutary rule which holds him estopped from asserting that the firm did not go through all the technical forms of law in order to put him in default. In order to permit the defendant now to assert that the firm was not ready to perform, when his own act prevented it, would permit of his own breach of contract to constitute a defense, and he would advantage by his own wrong. The plaintiff, as assignee of the claim, properly brings the action.

The judgment should be reversed, and a new trial granted before another referee; costs to abide the event. All concur.

(18 App. Div. 137.)

### HANNA v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. May 21, 1897.)

1. CARRIERS—EJECTING PASSENGERS—ENFORCING MUNICIPAL REGULATIONS.

A city ordinance which forbids passengers to ride on the front platforms of street cars does not authorize a street-railroad company to accept a fare from a passenger while riding on the front platform when there is no room for him elsewhere, and then eject him from the car without returning the fare.

**2. SAME—RIGHTS UNDER TRANSFER TICKET.**

A passenger on a street car who receives a transfer to another line is not entitled to board the first car that reaches the transfer point, regardless of whether there is room for him on the car.

Appeal from Kings county court.

Action by John Hanna against the Nassau Electric Railroad Company for ejecting plaintiff from defendant's street car. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James C. Church, for appellant.
Edward C. Tucker, for respondent.

PER CURIAM. The plaintiff was a passenger on one of defendant's railroad lines on Bergen street, in Brooklyn. When the car reached the intersection of Fifth avenue, he got a transfer slip entitling him to continue his journey on the line upon that avenue. When a car came along the avenue, the plaintiff boarded it by the front platform. He testifies that the conductor took from him his transfer slip; that subsequently two of the defendant's officers, who were riding on the front platform, instructed him that he could no longer ride on that platform, but must enter the car; that he found it impossible to enter the body of the car, and refused to leave the platform; that thereupon he was ejected from the car. For that assault the action is brought. The defendant's evidence tended to prove that there was room in the car for the plaintiff to enter, and also that plaintiff's transfer ticket had not been taken up. The court submitted the case to the jury, with instructions that if plaintiff's ticket had been taken from him by the conductor, and there was not sufficient room in the body of the car to permit the plaintiff to enter, then his ejection from the car was illegal, and he was entitled to recover, but that, if there was room in the car, he was bound to comply with the instruction to enter it, his removal from the car was lawful, and the defendant entitled to a verdict, unless excessive force was employed. We have no doubt of the correctness of this charge of the court on this main proposition involved in the case and presented on this appeal. There was at the time of the transaction, and still is, an ordinance of the city of Brooklyn as follows:

"Occupation of Platform. No persons except motermen, conductors or police officers in uniform, shall be allowed on the front platform of any such cars when in operation, except that such platform may be used for the exit of passengers at the corner stoppages."

The defendant contends that, even though it had received plaintiff's fare and taken his ticket, his presence on the front platform was, under the ordinance, unlawful, and that the defendant had the right to remove him therefrom. We think not. This ordinance imposed a duty on the railroad company. As between the railroad company and the passenger, it acted as a regulation of the former. It was undoubtedly a reasonable and proper regulation, and the defendant could enforce it; but it could not, when it had no accommodation

open to him within the car, retain the plaintiff's ticket or accept his fare while riding on the front platform, and then eject him from the car. The acceptance of the ticket or fare did not necessarily preclude the defendant from enforcing the ordinance. If, either intentionally or through inadvertence, it receives the fare from a passenger for whom there is no place within the car, we think it may repent of its action, and subsequently seek to comply with the ordinance. But restitution, in our judgment, is a condition precedent to repentance. If it had taken the plaintiff's fare, the defendant could not remove him from the car until it either returned or tendered to him the ticket which he had given up. Burnham v. Railway Co., 63 Me. 298; Bland v. Railroad Co., 55 Cal. 570. But the jury might have found that, while there was no room for the plaintiff to enter the car, still his ticket had not been in fact taken from him. In that case the plaintiff was properly ejected from the car. As to this, defendant's counsel requested the court to charge:

"That if the car that the plaintiff boarded was so crowded that it was impossible for the plaintiff to get inside of the same, that that fact did not give him the right to ride upon the front platform in violence of the said ordinance."

This was refused, and the defendant excepted. In response to a request for the plaintiff, the court charged:

"That where a street-railway company, after the passenger's fare, issues a transfer or ticket to the passenger to another line of cars belonging to its system, and a passenger to whom such transfer has been issued boards a car belonging to the line to which he has been transferred, the passenger so remains a passenger of such street-railway company both before and after the taking up of the transfer ticket by the conductor of the car to which he was transferred."

To this charge the defendant excepted. We think this request and refusal were sufficient to present the point involved in this branch of the case, and that the rulings of the court were erroneous. A transferred passenger has not necessarily the right to board the first car that approaches on the line, regardless of whether there is accommodation for him. As already stated, in our view he had not the right to remain on the front platform unless the company received him as a passenger. His duty was to wait till a car approached in proper condition to receive him. If none came, he could maintain his action against the company for breach of the contract to carry him. But he could not force himself into a dangerous or improper position upon the car, against the action and remonstrances of the defendant.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.

GOODRICH, P. J. (concurring). The complaint alleges that on April 10, 1896, the plaintiff was a passenger on the defendant's Bergen Street Line, having paid his fare thereon; that, on the arrival of the car at Fifth avenue, he received a transfer ticket for that line, and got on the front platform of one of the cars, and delivered his transfer ticket to the conductor, who told him to go inside of the car, which he attempted to do, but was prevented from doing by reason of the crowded condition of the car; that thereupon one of the defendant's servants who was standing by the

motorman seized him, and with great violence endeavored to push him inside of the car; that the passengers refused to allow him to enter, whereupon the motorman, conductor, and another servant of the defendant seized him by the throat and struck him, and, with great violence, put him off the car; that he twice again managed to regain the front platform, and was put off both times with violence, but again got on, and was permitted to ride to his place of destination. The defendant, among other defenses, pleaded an ordinance of the city of Brooklyn which reads as follows:

"(3) Occupation of Platform. No persons except motormen, conductors or police officers in uniform, shall be allowed on the front platform of any such cars when in operation, except that such platform may be used for the exit of passengers at the corner stoppages. * * *

"(7) Penalty. Any corporation whose officers, agents or servants shall wilfully or negligently violate any of the provisions of this ordinance shall be liable for a penalty in the sum of twenty-five dollars for each and every offence."

At the close of the plaintiff's case, the defendant moved to dismiss the complaint on the following grounds:

"First, that the plaintiff, having taken passage on this car, was bound to comply with the regulations which the company might make, and also bound to comply with any ordinances of the city of Brooklyn entailing an obligation on the defendants relative to the operation of their railroad; second, that the defendant in the operation of its railroad was bound to see that in the conduct of its business the ordinance of the common council relative to carrying of passengers was complied with."

This motion was renewed at the close of the testimony, and both motions were refused. The learned court charged that it was the duty of the plaintiff upon taking passage on defendant's car to observe the regulations of the defendant company and common council relative to the operation of street cars, that the plaintiff was a lawful passenger, and that:

"The question is a narrow one, and turns entirely upon whether or not there was room in this car for the plaintiff to enter. * * * The question, then, is for you to determine, whether, as a question of fact, there was such a crowd as made it impossible for him to leave the platform and go in. If there was such a crowd, I charge you, he had a right to ride upon the front platform, providing his fare had been taken before any notice had been given to him to leave the platform."

To these parts of the charge the defendant excepted. The court was also requested to charge:

"That it was the duty of the plaintiff to obey the ordinance in question, and, upon the plaintiff's refusing to ride elsewhere on said car than upon the front platform, to remove him from the front platform." The Court: "I so charge you, if there was room for him to ride elsewhere on the car."

Thus, it. will be seen that the defendant, under the exceptions, squarely raised the question of the force of the ordinance above referred to.

Lord Coke says that the word "by" or "bye" signifies a habitation, and that a by-law or ordinance may be defined to be the law of the inhabitants of the corporate place or district, made by themselves or the authorized body, in distinction from the general law of the country, or the statute law of the particular state. It is well settled that it is competent for the legislature to delegate to munic-

ipal corporations the power to make by-laws and ordinances, and such ordinances have the force, in favor of the municipality, and against persons bound thereby, of laws passed by the legislature of the state. Hopkins v. Mayor, etc., of Swansea, 4 Mees. & W. 621; 1 Dill. Mun. Corp. §§ 307, 308. The ordinance in question, therefore, has the same effect in the city of Brooklyn as an act of the legislature of the state, and no question of its validity is raised by the plaintiff's counsel. Ignorance of its existence would not avail or excuse the plaintiff. Then he was riding upon the front platform in open defiance of the law. Especially was he a wrongdoer in persisting to occupy the place after notice to leave. The fact that he could not obtain admission to the inside of the car on account of the resistance of the crowd did not justify him in persisting in his determination to ride upon the front platform. When he was requested by the servants of the defendant to leave the front platform, he was bound to comply with such request, and his refusal to do so was a breach of law which justified the defendant in using such force as was necessary to exclude him. If he had left the front platform when ordered, he would have been entitled to passage upon another car, and could have maintained his action for a refusal to carry him. Nor does it matter that two persons, not in uniform, other than the motorman, were riding upon the front platform. The testimony shows that the president and another officer of the company, not in uniform, were riding upon the platform, and that the president was handling the brake. Even if these persons had been strangers to the corporation, their presence did not justify the plaintiff in claiming to ride upon the front platform. If the defendant, by permitting these persons on the front platform, was infringing the ordinance, a penalty was provided which the city could enforce. Infraction of the law by one person, however, does not justify its infraction by another. To hold otherwise would justify disobedience of the law by a number of persons where disobedience by a single person would be punishable.

The plaintiff argues in support of the verdict that he could not, in an action for damages to his person by negligence of defendant, be held guilty of contributory negligence in standing on the front platform. It is not necessary to consider this matter, as the question does not arise in this action. Nor does it matter that the ordinance provides a penalty only against the company, and does not provide one against a passenger. This would seem to more strongly justify the defendant in enforcing the observance of an ordinance for breach of which it was liable, as it had no other method of self-protection. Besides, the prohibition and the penalty are in distinct sections of the ordinance. The section which forbids the allowing of passengers on the front platform is complete in itself, and makes a rule which all persons are bound to obey. The plaintiff cannot shield himself from a breach of the law by pleading that no penalty attaches to him for its violation. He cannot take advantage of his own wrong, and he was wrong in riding where he and all others were forbidden to ride. It is proper for us also to refer to the refusal of the learned court to charge

as requested, and to his modification of the request by making the duty of the plaintiff to obey the ordinance depend upon the crowded condition of the car. We think this was error.

The judgment must be reversed and a new trial granted.