JOHN JENKINS, Plaintiff, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Defendant.

*Railroad — limit of time improperly imposed upon the use of transfer tickets — its acceptance of a ticket not a waiver of any rights — a passenger wrongfully removed may, in an action to recover damages therefor, prove the fact of his arrest, etc.*

A rule of a street railway company, required by section 104 of chapter 565 of the Laws of 1890, as amended by chapter 676 of the Laws of 1892, to carry any passenger desiring to make one continuous trip between any two points on the lines controlled by it, for a single fare, which provides that the transfer ticket given to the passenger on alighting from the car on which he began his journey for the purpose of enabling him to continue it on another car, shall be void if not used within ten minutes, regardless of whether the condition of the cars which the street railway company supplies during that time is such as to afford him suitable accommodation, is arbitrary and illegal.

The acceptance by a passenger of such a transfer ticket does not modify the original contract of carriage or waive any rights acquired under it.

A passenger who, unable to find accommodation in the cars approaching during the ten minutes, enters a subsequent car and is removed therefrom by the conductor, is entitled, on the trial of an action to recover damages for such removal, to prove the fact of his arrest, his transportation in a patrol wagon and his subsequent discharge from arrest, where such arrest was made upon the order of the conductor, and constituted a part of the act of ejectment, as bearing upon the damages which he is entitled to recover.

MOTION by the plaintiff, John Jenkins, for a new trial made on a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon the dismissal of the complaint by the direction of the court after a trial at the Kings County Trial Term.

*Robert Stewart*, for the plaintiff.

*Charles A. Collin*, for the defendant.

WOODWARD, J.:

This action was brought to recover damages, the plaintiff having been ejected from one of the cars of the defendant company under circumstances which, he contends, entitle him to recover. The action came on at a Trial Term of this court, and, at the conclusion of the defendant's evidence, the court granted the defendant's motion to dis-

miss the complaint, directing that the exceptions taken at the trial be heard in the first instance at the Appellate. Division of the Supreme Court.

Briefly stated, the facts, as developed on the trial, are as follows: The plaintiff rode from the Wall street ferry on the Montague street car of the defendant, and at the corner of Montague and Court streets received a transfer ticket of the defendant, authorizing him to take a Fulton street car from the corner of Court and Montague streets. The transfer ticket read : "Void after time punched, and good only for this current trip on any line of this company, and in either direction from the junction of Court and Montague street." It was two-thirty P. M. when the plaintiff received this transfer ticket, and it was punched at the figures two-forty, allowing ten minutes for the transfer. The plaintiff, who was afflicted with hernia, his truss irritating him, desired to get a car in which he could sit down. The first car which came along was so crowded with passengers that it did not stop to take on any who were waiting. The second car stopped, but was already so full that passengers were standing in the aisle. The plaintiff did not attempt to get on board. The third car which came along going in the right direction afforded vacant seats, and the plaintiff got aboard.

The evidence is that the conductor took up the transfer ticket of the plaintiff, along with others, and went out upon the rear platform, when, after sorting over the transfers, he came back into the car and told the plaintiff that the time limit on his transfer had expired, and that he would have to pay his fare, at the same time calling attention to a posted rule of the company which provided that the transfer tickets must not be honored after the time puched in the margin, and, if they were taken by the conductors, they would not be allowed in the accounting. The conductor tendered the plaintiff the transfer ticket which he held in his hand, and demanded that the plaintiff pay his fare. This he refused to do, and the conductor called a policeman and ejected the plaintiff, and it is alleged that the policeman, acting on the orders of the conductor, arrested the plaintiff, taking him to the Police Court where he was afterwards discharged, but this evidence was not allowed to appear in the case. It does not appear that any more force was used than was necessary

in removing the plaintiff, and we are asked to determine whether the facts in the case were sufficient to justify the court in allowing the jury to pass upon the evidence.

The main question presented is whether the plaintiff was within his legal rights. If he had a right to be in that car, without the payment of a second fare, then it was clearly unlawful for the defendant, through its servants, to eject him, and he has a right to have the judgment of a jury upon his action: The real question involved, then, is whether the defendant has the right to make an arbitrary rule, which compels its patrons to take the first car which comes along, regardless of its capacity to give them accommodations, in order that they may have the benefits intended to be secured by the law of this State. It is true, as was held in the case of *Townsend* v. *N. Y. C. & H. R. R. R. Co.* (56 N. Y. 295), citing the case of *Hibbard* v. *New York & Erie R. R. Co.* (15 id. 455), that a railroad company has the right to " establish reasonable regulations for the government of passengers upon its trains, and forcibly eject therefrom those who refused to comply with such regulations," and that a regulation " requiring passengers either to present evidence to the conductor of a right to a seat, when reasonably required so to do, or to pay fare, is reasonable ; " but the case now under consideration presents no facts to bring it within this rule. Section 104 of chapter 565 of the Laws of 1890, as amended by chapter 676 of the Laws of 1892, provides that " Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract *any passenger desiring to make one continuous trip between such points for one single fare*, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger, paying one single fare, a transfer, *entitling such passenger to one continuous trip* to any point or portion of any railroad embraced in such contract, *to the end that the public convenience may be promoted* by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare." This is a statute extending the rights of the individual, and " to the end that public convenience may be promoted," and is to be liberally

construed and strictly enforced to accomplish these objects. Is it compatible with the provisions of this statute that the railroad company should make it depend for its operation upon the individual taking a car within ten minutes, regardless of the condition of the car which the defendant offers for such services? We think not. The language of the law is that "Every such corporation entering into such contract shall carry   *   *   *   any passenger desiring to make one continuous trip between such points for one single fare, *   *   *" and "upon demand, and without extra charge," shall "give to each passenger paying one single fare a transfer, entitling such passenger to *one continuous trip*." The statute makes the limitation; it is that a "passenger desiring to make one continuous trip" shall, upon demand, be given a transfer, which entitles him to "one continuous trip," not upon the car where he is then riding, but upon the car to which he is transferred, and this is done "to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare." If the connecting company offered no car within ten minutes, would this rule be reasonable? Is it any more reasonable if the company affords no car which permits the passenger to ride in comfort and safety? "It is quite apparent that a carrier of passengers," say the court in the case of *Barker* v. *Central Park, etc., R. R. Co.* (151 N. Y. 237) "must make and enforce such reasonable rules as will enable it to discharge its duties to the general public in a proper manner," but this is no warrant for a corporation charged with the duty of transporting passengers in a safe and comfortable manner to make and enforce a rule which enables it to discharge its duties to the public in an improper manner.

"Standing room in the passageway," say the court in the case of *Willis* v. *Long Island R. R. Co.* (34 N. Y. 670), "is not proper accommodation for passengers. That part of the car is just what its name indicates, a *way* through the car. Each passenger seated in the car has a right to pass along the way at any and all times, and he, therefore, has a right to insist that it shall be at all times open and unobstructed. The company cannot rightfully compel a passenger to stand in it instead of furnishing him with a seat, and even if he consents to do so, they have no right to place him there

as against the passengers who are seated." Again, in the same case the court say : "So far as the statute recognizes an obligation on the part of railroad companies to furnish their passengers with proper seats inside of their cars, it simply affirms a principle of the common law and enforces a duty springing from their relations as carriers of passengers, and their undertaking with each passenger to transport him safely and properly over their road."

In the case of *Werle* v. *Long Island R. R. Co.* (98 N. Y. 650) the court say : "The sale of tickets by the defendant at that station for passage on that train bound it to furnish a safe and secure place for its passengers to ride and comfortable accommodations for their convenience." To the same effect is the case of *Thorpe* v. *N. Y. C. & H. R. R. R. Co.* (76 N. Y. 402). The individual may waive these rights and may submit to the annoyance and discomfort incident to travel in over-crowded conveyances, but the fact that thousands of persons do waive their rights each day does not justify the railroad company in establishing a rule compelling people to do so, or to forfeit their rights under the law of the State. A regulation that the passenger should take the first car which afforded him a seat or suitable accommodations would meet all the requirements of the law, as it would evidence the good faith of the individual in his desire to make a continuous trip, but an arbitrary time limit, applying equally to the feeble and infirm, and which is only sufficient to allow a very narrow choice of cars, cannot be said to be such a reasonable regulation as the company is justified in making under the law.

In a very similar case occurring in Detroit (*Heffron* v. *Detroit City R. Co.*, 16 Law. Rep. Ann. 345), where the plaintiff was given a transfer ticket reading, "This slip will not be honored unless presented at the intersection of the Woodward avenue line and line punched in margin, within fifteen minutes of time punched, for a continuous trip only," the appellate court sustained the trial court in its judgment in favor of the defendant, but the decision was based upon the proposition that the transfer was voluntary on the part of the company, and that it had a right to make such terms as it might elect. "The company had the right," say the court, "under the ordinances of the city, to treat the Jefferson avenue line as a single road, and to charge five cents fare; but it saw fit to make a continu-

ous fare of five cents from any point on the Woodward avenue line
to the Michigan Central depot, if the transfer was made in fifteen
minutes from one line to the other. In this case half an hour at
least had elapsed. If no car had passed within that time, and the
car from which plaintiff was ejected was the first one to pass after
plaintiff had alighted from the Woodward avenue car, the plaintiff
may, under a proper declaration, have an action against defendant,
but no such state of facts was averred in the declaration in this case.
\* \* \* As long as the defendant had made no contract with the
plaintiff to carry him, without exception or conditions, on both lines
to the depot for a single fare of five cents, while it had not held out
to the public that it would do so, and when it was not obligated so
to do by its own charter or the ordinances of the city of Detroit,
there was no legal reason why it could not make the regulation that
it would carry passengers to the depot on both lines, for a single
fare of five cents, provided the transfer ticket was used within fif-
teen minutes after it was punched on the Woodward avenue line;
and, there being *no legal reason* why this restriction should not be
made, the passenger who accepts the ticket must abide by its terms."
The case is presented, however, in a very different light when the
law of the State requires these transfers to be made, and makes no
other limitation than that the passenger shall desire to make one
continuous trip.

In the case of *McMahon* v. *Third Avenue Railroad Co.* (15 J.
& S. 282) the plaintiff paid for a passage over the line of the defend-
ant, and was given, at an intermediate point thereon, in return for
an additional sum paid by him, a ticket, on which were these words:
"Third Avenue Railroad Company. Good only from Sixty-fifth
street up to Yorkville and Harlem for a continuous ride. By order
of the president." The plaintiff did not use the ticket immediately,
but afterwards, and upon the same day, he entered one of the cars
of the company below the point, paying his fare to Sixty-fifth street.
After passing this point the plaintiff tendered the ticket which he
had purchased earlier in the day, and it was refused by the con-
ductor, who, upon the plaintiff refusing to pay his fare, ejected him
from the car. The jury found for the plaintiff, and on appeal the
court say: "The ticket contains the contract between the plaintiff
and the defendant. The meaning of the words on it is plain. They

were rightly construed by the learned judge before whom the case was tried. The language of the ticket does not connect the ride below Sixty-fifth street with the ride above that street. Besides, the plaintiff offered the ticket on a 'continuous ride.' He did not leave the car after he entered it, until he was put off by the defendant's servant. The ticket entitled the plaintiff to a ride upon any passenger car run by the defendant. It contained no notice of any restriction or limitation of the right which it purported to give. \* \* \* The ticket, *prima . facie,* was evidence of the plaintiff's right to that 'ride,' and the conductor had no right to demand fare, and to refuse the ticket when it was tendered him." This case was decided before the passage of the statute under which the action at bar is brought, and has no bearing except as to the question of a continuous trip, and upon the proposition asserted with greater clearness, perhaps, in the case of *Dunphy* v. *Erie Railway Co.* (42 N. Y. Super. Ct. 128) that: "The rights of the plaintiff rested upon the contract that was made when he bought the ticket. The benefits he gained as to times and trains and the journey were then settled and fixed, and the limitations of his rights were then settled and fixed." The rights of the plaintiff in this action were fixed when he bought his ticket; when he paid his fare. By the laws of this State he became possessed of the right to have a transfer ticket given to him which should entitle "such passenger to one continuous trip" from the point of transfer to his destination, and no regulation of the company fixing an arbitrary time could defeat this right. If the company was prepared to furnish suitable cars, with sufficient room so that the passengers could be given seats, there would be no doubt of the plaintiff's duty to take the first car which came along after he left the other car; that would be necessary as an element of good faith on his part in desiring to take a continuous trip, but it is not the law of this State that a street railway company, operating under the law as amended in 1892, can compel its passengers to crowd into overcrowded cars, or to stand in the aisles, in order to receive the benefits of the law. "The duty to receive persons as passengers upon a tender of the fare," says Angell on the Law of Carriers (§ 528), "if there be sufficient room, involves the obligation that he shall not be overcrowded, after he has paid his fare and taken his

seat, and be thereby, as it were, expelled.    The contract must be fairly performed." As was said by this court in the case of *Hanna* v. *Nassau Electric R. R. Co.* (18 App. Div. 137): "A transferred passenger has not necessarily the *right* to board the first car that approaches on the line, regardless of whether there is accommodation for him. \* \* \* *His duty was to wait till a car approached in proper condition to receive him.* If none came, he could maintain his action against the company for breach of the contract to carry him. But he could not force himself into a dangerous or improper position upon the car against the action and remonstrances of the defendant." This being good law for the corporation, it is equally good for the plaintiff, and it fully sustains his contention that he was lawfully upon the car of the defendant, and that he was entitled to have the jury pass upon the subsequent transaction.

The transfer ticket, which was given to the plaintiff, and which put an arbitrary limit upon the time, did not modify the original contract entered into at the time of paying the fare; nor did the plaintiff, in accepting it, waive any rights which he had under the original contract. As was said in the case of *Lechowitzer* v. *The Hamburg-American Packet Co.* (59 N. Y. St. Repr. 486): "The paper relied on as limiting defendant's liability was not given to him when and where he paid for his passage, but days afterward when he was already at sea on the steamer and powerless to repudiate the pretended contract. When a party has no freedom to reject a proposed stipulation, because then unable to reinstate himself \* \* \* an inference of his assent to the stipulation would be simply preposterous. His proceeding on the voyage and suffering his baggage to remain with the carriers were compulsory, and can, therefore, imply no assent to terms of transportation then for the first time communicated to him." The plaintiff could not change the contract; he was bound to accept the transfer ticket tendered, or none at all, and he cannot, therefore, be deemed to have given any assent to the condition imposed, which limited the right guaranteed by the statute.

It does not seem to be necessary to go into the consideration of the other points involved in this action to any great length, but as the case must be retried, it may not be out of place to say that in our opinion the trial court was not justified in excluding the evi-

dence as to the arrest, transportation in a patrol wagon and subsequent discharge of the plaintiff. If the arrest was made upon the order of the conductor, and constituted a part of the act of ejectment, it was proper that the jury should be allowed to pass upon the facts, and to have the evidence before them in estimating the damages which the plaintiff may have suffered by reason of such act. (*Palmeri* v. *Manhattan R. Co.*, 133 N. Y. 261; *Lynch* v. *Metropolitan El. R. Co.*, 90 id. 77.)

The motion for a new trial is granted, costs to abide the event.

All concurred.

Exceptions sustained and new trial granted, costs to abide the event.