formities I found," and "corresponds to the deformities and disabilities I found."

The jury found a verdict in favor of plaintiff for $1,500, and it is probable that the amount of the verdict was influenced by this incompetent evidence.

It follows that the judgment must be reversed, and a new trial ordered, with costs to appellants to abide the event.   All concur.

(90 Misc. Rep. 672)

### KENNEY v. NEW YORK RYS. CO.

(Supreme Court, Appellate Term, First Department.   June 23, 1915.)

1. CARRIERS ☞373—TRANSFER OF PASSENGER—ARRANGEMENT BETWEEN COMPANIES.

A street railway company, to whose car a passenger transferred from a car of another company, was liable for the act of the conductor of the first company in issuing an insufficient transfer under a transfer agreement between the companies.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1461; Dec. Dig. ☞373.]

2. CARRIERS ☞356—TRANSFER OF PASSENGERS—RIGHTS OF PASSENGER—CONNECTING RAILWAYS.

The conductor of a street railway company, receiving a passenger from another line, with which it had transfer agreement, was charged with knowledge of its own schedules, and was bound to give due consideration to the passenger's statement that a transfer presented by him shortly after an hour at which it was marked to expire was given to him, but shortly before the time limited, and that the time had expired while he was waiting at the transfer point, and it was liable for ejecting him for refusal to pay fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1409, 1410, 1423–1432; Dec. Dig. ☞356.]

Appeal from City Court of New York, Trial Term.

Action by Michael Kenney against the New York Railways Company.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued June term, 1915, before GUY, BIJUR, and PAGE, JJ.

James L. Quackenbush, of New York City (H. J. Smith, of New York City, of counsel), for appellant.

Louis Cohn, of New York City (George W. Smyth and Louis Cohn, both of New York City, of counsel), for respondent.

BIJUR, J.   This action is brought for damages incurred by plaintiff in having been ejected from a car operated by defendant.

Plaintiff, according to his own story (defendant having rested on plaintiff's case), boarded a Fifty-Ninth Street east-bound car at Sixth avenue at 8 or 10 minutes to 3 o'clock in the afternoon.   He requested and received a transfer on which the hour "3 p. m." was canceled.   The transfer ticket reads:

"Good only * * * if presented before the time canceled at intersection of issuing line and a line named thereon."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

· Plaintiff objected to the ·short time intervening· before 3 o'clock,. but the conductor of the Fifty-Ninth Street car said: "That is good· for a hour yet." At Fifty-Ninth street and Lexington avenue, at about 5 minutes to 3, plaintiff alighted and waited for an uptown car, desiring to take one which ran to Lenox avenue. It was a rainy· afternoon, and he waited until some minutes past 3 before such a car passed, which he then boarded. The conductor accepted the ticket under protest, and at the car barns at Ninty-Ninth street plaintiff was told that he must either pay his fare or alight. When he refused to pay he was ejected. It is conceded that the Fifty-Ninth Street line is not operated by the same company as the Lexington Avenue; that the transfer arrangements existed between them.

[1] Appellant urges that, if plaintiff had a cause of action, it is against the Fifty-Ninth Street line alone, and merely for negligence or failure to give him an adequate transfer. On that point, however, it is to be observed that, by virtue of the transfer arrangements between the two companies, the defendant is clearly liable for the act of the Fifty-Ninth Street conductor as its agent for the purpose of issuing the transfer. Jacobs v. Third Avenue Ry. Co., 71 App. Div. 199, 75 N. Y. Supp. 679. Moreover, the contractual obligations between the two companies and the passenger are the same under what· is called a "voluntary" transfer agreement as under a statutory requirement. Georgia Ry. & Elec. Co. v. Baker, 125 Ga. 562, 564, 565, 54 S. E. 639, 7 L. R. A. (N. S.) 103, 114 Am. St. Rep. 246, 5 Ann. Cas. 484. But this point is immaterial to the cause of action in the present case.

[2] The appellant's substantial contention is that, as the transfer was not good on its face when presented to defendant's conductor, he was justified in ejecting the plaintiff, in conformity with the doctrine laid down in Monnier v. N. Y. C. & H. R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619. It may be said in passing that appellant's citation of Nicholson v. Brooklyn Heights Ry. Co., 118 App. Div. 13, 103 N. Y. Supp. 310, is irrelevant, because in that case the time limit had already expired when the conductor gave the transfer, and the passenger observed that fact.

Similarly, in the case of Weber v. Rochester, S. & E. R. R. Co., 145 App. Div. 84, at pages 86, 87, 129 N. Y. Supp. 304, it appears that the transfer ticket involved had no hour canceled at all, although the transfer regulations printed on its back "in plain type" called attention to the fact that the passenger "should see that line and time are correctly punched."

In the case at bar, it is undenied that the transfer was, both in fact and on its face, perfectly good when issued; plaintiff merely complaining that the time intervening before the hour canceled, namely, 3 p. m., was too short.

In the Monnier Case, a passenger had boarded a train at a station where a ticket office existed. By statute (L. 1857, c. 228, § 1)· the railroad was required at every such station to· keep the office open at least one hour prior to the departure of a train. By section 2 any person who entered a train at such a station was required to.

pay a certain additional fare. A rule of the company, said to be "sanctioned" by the statute, required the conductor to exact an additional fare from a passenger who boarded the train at such a station without presenting a ticket. Plaintiff had no ticket, because, as he explained to the conductor, the ticket agent was absent when plaintiff tried to buy his ticket, during the 10 minutes prior to the leaving of the train. The prevailing opinion (at page 285 of 175 N. Y., 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619) says that the rule to which I have referred was "concededly a valid and reasonable regulation." This disposes of the doubt whether the statute really sanctioned any rule other than one in strict conformity with its terms, namely, that an additional fare might be exacted only in case a passenger boarded a train at a station at which the ticket office had actually been open during the hour preceding its departure. However, as pointed out by Cullen, J., in Parish v. U. & D. R. R. Co., 192 N. Y. 353, 358, 85 N. E. 153, the point on which four judges concurred in the Monnier Case, was "that the conductor could have no knowledge on the subject (of the passenger's excuse); that he was not bound to accept the passenger's statement"; and that therefore the passenger should have complied with the request. Also "that the conductor was necessarily ignorant of the facts and was justified in acting on appearances." In the concurring opinion in the Monnier Case, the language employed (page 290 of 175 N. Y., page 572 of 67 N. E. [62 L. R. A. 357, 96 Am. St. Rep. 619]) is:

"The conductor did not know and ordinarily could not know whether the ticket office there had been kept open continuously for an hour before the departure of the train. He had a right to act on appearances."

Now, in the case at bar, in the first place, it is, to say the least, exceedingly doubtful whether the learned judge below was not entirely right in charging that, from the language of the transfer, it was good if the passenger was actually present at the point of intersection ready to take a car prior to the time limit. The transfer does not say that it must be "presented to a conductor at the intersection, etc.," prior to the hour canceled. See, also, the intimation to that effect in Heffron v Detroit City R. Co., 92 Mich. 406, 411, 52 N. W. 802, 16 L. R. A. 345, 31 Am. St. Rep. 601. But the point upon which I base my opinion that the charge of the learned judge below was correct is that this case differs radically from the Monnier Case in that the conductor "ordinarily could know" and in fact, in this case, must have known that his car was the first car which passed the intersection after the hour canceled. Concededly the plaintiff might have, according to the very terms of the transfer, even if construed as appellant claims, boarded any one of defendant's cars which passed the point of intersection up to the moment of 3 o'clock. It must be assumed not only that the conductor of the car involved could know, but that he actually did know, the running schedule of, and the interval between, cars on his own line; that is manifestly part of the business of a conductor. In line, therefore, with the express distinction made in the Monnier Case, the conductor of defendant was bound to give due consideration to the explanation of the plaintiff, the ac-

curacy or correctness of which has not been assailed by the defendant. Indeed, it has, by the jury herein, been found to be true. It involved the fact known to, or which should have been known by, the conductor that cars running on this line to the terminal to which plaintiff desired to go ran on a headway of some 8 or 10 minutes, and that therefore the terms of the transfer, as expressed on its face, has been lived up to by the plaintiff; and that his failure to present such transfer to a conductor on a car preceding that of the one involved was due to the fact that, during the interval between some minutes before 3 and the time of its actual presentation, no car, except the one involved, had passed the point of intersection.

In this view of the case, it is unnecessary to refer to a number of cases that have been cited by respondent, such as Jenkins v. Bklyn. Hts. R. R. Co., 29 App. Div. 8, 51 N. Y. Supp. 216, Jacobs v. Third Ave. R. Co., 71 App. Div. 199, 75 N. Y. Supp. 679, and Daniel v. Bklyn. Hts. R. R. Co., 67 Misc. Rep. 78, 121 N. Y. Supp. 577, which, on their face, sustain the respondent's claim or to resolve the question suggested in the Nicholson Case, supra, whether the Jenkins and Jacobs Cases must not be regarded as having been, in some degree, modified by the subsequent Monnier Case.

The judgment should therefore be affirmed, with costs. All concur.