# Staunton.

VIRGINIA AND SOUTHWESTERN RAILWAY COMPANY v. HILL.

September 13, 1906.

Absent, Keith, P.

1. COMMON CARRIERS—*Regulation Requiring Passenger to Produce Ticket—Ejection of Passenger—Damages.*—A regulation of a railway company requiring a passenger to produce a ticket to his destination or pay fare, under penalty of expulsion from the train, is a reasonable regulation and within the power of the carrier to make; but while a carrier may enforce this rule, it has no right to inflict wrongs and injuries upon a passenger in ejecting him from the train. The right to eject the passenger under such circumstances will not excuse the carrier from using more force or violence in doing so than is necessary, and if unnecessary force and violence be used, resulting in wrongs and injuries to the passenger, the carrier is liable for damages therefor.

2. COMMON CARRIERS—*Conclusiveness of Passenger's Ticket—Mistake of Ticket Agent—Ejection of Passenger.*—As between the conductor of a railway train and a passenger, the face of the passenger's ticket is conclusive evidence as to the extent of his right to ride, and a passenger has no right to ride beyond the destination indicated by his ticket, although he may have purchased and paid for a ticket to a point beyond, and, as explained by him to the conductor, his failure to have a proper ticket is due to the mistake of the ticket agent in giving him a ticket to an intermediate point. In such case, if ejected by the conductor for failure to pay the additional fare, the passenger's right of action against the carrier is not for the ejection, which is lawful, but for the breach of contract.

3. COMMON CARRIERS—*Ejection of Passenger—Resistance—Case at Bar.* It is the duty of a passenger on a railway train, if he has not the required ticket or token evidencing his right to travel on that train, to pay his fare or quietly leave the train when requested, and resort to his appropriate remedy for the damages he has sustained.

If he attempts to retain his seat without paying his fare, and is expelled by the conductor, using no more force than is necessary, the carrier is not liable for the expulsion. Nor in such case is the carrier liable for an injury to the passenger resulting from the use of force in ejecting him, made necessary by his own resistance and misconduct. In the case at bar it appears that the plaintiff violently resisted the ejection, and received the injuries complained of in a subsequent altercation with another passenger who had assisted in ejecting him, but the instructions given by the trial court did not distinguish between the force used for which defendant was liable and that for which it was not liable, and hence were misleading.

Error to a judgment of the Circuit Court of Scott county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

*D. D. Hull, Jr., Bullitt & Kelly* and *W. S. Cox,* for the plaintiff in error.

*D. F. Bailey* and *Richmond & Bond,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action on the case, brought to recover damages for wrongs and injuries alleged to have been sustained by reason of the plaintiff's having been unlawfully ejected from a train of cars of the defendant company by the conductor of the train.

It appears that the plaintiff applied to one Draper, the defendant's ticket agent at Clinchport, for a ticket from that point to Appalachia. He paid the agent the correct fare, but the agent, by mistake, gave him a ticket to Duffield, an intermediate

point. The plaintiff was in the habit of buying tickets from Clinchport to Appalachia, was familiar with the form of ticket, and from a mere casual observation, which he says was all that he gave, he claims that at the time he supposed the ticket was good on its face to Appalachia. He put the ticket in his vest pocket, and when the train arrived a few minutes later he got on board. The conductor came through the car and took up the ticket, which he saw read to Duffield, and put a check in plaintiff's hat to indicate his destination. After the train left Duffield the conductor again passed through the car and noticed that plaintiff was still on board, and approached him, asking where he was going, to which the plaintiff replied, "To Appalachia"; whereupon the conductor told him his ticket was to Duffield, the station they had passed, which the plaintiff denied, and insisted on having the conductor look at his tickets. The conductor told plaintiff that it was not necessary for him to look, as he had already done so. Plaintiff then informed the conductor that he had paid for a ticket to Appalachia, giving the correct fare to that point, and declared that he would not pay again. The conductor then explained to the plaintiff that under the rules of the company he must either have a ticket or cash fare for the distance between Duffield and Appalachia, and that if the plaintiff would pay him the additional fare, he (the conductor) would give him a receipt for it, and if plaintiff's contention was correct the money would be refunded, or words to that effect; but that if plaintiff refused to do this he would have to be put off. Plaintiff declared that he had the money to do this, but declined to pay any additional fare, and stated that the company might put him off and he would sue the company. It was then a little after nightfall, and the conductor stopped the train and told the plaintiff to get off, but he refused to do so. The conductor then took hold

of plaintiff and with the assistance of a passenger named Moss, who was seated nearby, with much difficulty succeeded in putting him out of the car. The plaintiff resisted with all his strength and scuffled and struggled violently, but did not strike either the conductor or his assistant. According to plaintiff's evidence, after he was gotten out of the coach on the platform the defendant's flagman, Sproles, drew a revolver on him. The occurrence took place about a mile from the nearest station and about 150 feet from the nearest house, and was in the month of December when the weather was cold.

After plaintiff was ejected from the train, still protesting, he called for his valise, and while the conductor went back in the car for the valise plaintiff became engaged in an altercation with Moss while standing upon the ground holding to the rod usually taken hold of by passengers when getting upon the train, and Moss, who was standing on the step or platform of the car, kicked plaintiff in the mouth and felled him to the ground. The conductor returned with the valise and threw it from the train to the ground, saying to plaintiff, "Take the damned old grip and go to hell with it." The train then moved on, leaving plaintiff alone, until a friend at the next station, hearing of what took place, went back and took him to his store where he remained overnight; and it appears that his ankle was sprained, his lips and mouth cut, and some of his teeth knocked loose. It is admitted by the agent at Clinchport that the plaintiff called for a ticket to Appalachia, and paid the price of a ticket to that point, but he says that he made a mistake and issued the ticket to Duffield, an intermediate station.

At the trial the plaintiff was awarded damages in the sum of $2,500, and to the judgment of the court upon the verdict of the jury this writ of error was awarded.

During the progress of the trial, after the evidence was

all in, the defendant moved to exclude all of plaintiff's evidence because the same did not support an action of tort, which motion was overruled, and this ruling is assigned as error.

We do not think there is any error in this ruling, for if the defendant, under the circumstances, had a right to eject the plaintiff from its train, it did not have the right, as we shall presently see, to use more force than was necessary to do this,. and if in using tortious means in so doing the plaintiff sustained injury, a right of action accrued to him to recover damages for those injuries. He might have, under the circumstances,. waived the tort and sued for breach of his contract, but he did not choose to do this.

It is earnestly contended on behalf of the defendant that the face of the ticket, as between the conductor and the plaintiff, was conclusive evidence as to the extent of the latter's right to ride; while the plaintiff's contention is that it was the duty of the conductor to accept his word for the transaction between. him and the ticket agent.

The defendant company, like all other carriers of passengers,. had a rule or regulation requiring a passenger to produce a ticket to his destination or pay fare, under penalty of expulsion from the train. Such a rule is universally held to be a reasonable one, and within the power and right of the carrier to make; but both upon reason and authority, while a carrier may enforce this rule, it has no right to inflict wrongs and injuries upon a passenger in ejecting him from a train; in other words, the right to eject the passenger under such circumstances would not excuse the carrier for using more force or violence in doing so than is necessary; and if unnecessary force and violence be used, resulting in wrongs and injuries to the passenger, the carrier is clearly liable for damages therefor.

First, as to the right of the defendant to eject the plaintiff

from its train, under the circumstances narrated:

In *Frederick* v. *Marquette, &c., R. Co.,* 37 Mich. 342, 26 Am. Rep. 531, it was held that as between a conductor and passenger, the latter's ticket is conclusive evidence of the extent of his right to travel, and he must produce it when called on as evidence of his right to the seat he claims. "In determining the duties of conductors and the rights of passengers, the methods generally adopted by common carriers to carry on business successfully, must be regarded." The opinion in that case, after holding that such a rule and regulation of a carrier is reasonable, says: "It is within the common knowledge or experience of all travelers that the uniform and, perhaps, the universal, practice is for railroad companies to issue tickets to passengers with the places designated thereon from whence and to which the passenger is to be carried; that these tickets are presented to the conductor or person in charge of the train, and that he accepts unhesitatingly of such tickets as evidence of the contract entered into between the passenger and his principal. It is equally well known that the conductor has but seldom, if ever, any other means of ascertaining, within time to be of any avail, the terms of· the contract, unless he relies upon the statement of the passenger, contradicted as it would be by the ticket produced, and that even in a very large majority of cases, owing to the amount of business done, the agent in charge of the office, and who sold the ticket, could give but very little, if any, information upon the subject. That this system of issuing tickets, in a very large majority of cases, works well, causing but very little, if any, annoyance to passengers generally, must be admitted. There, of course, will be cases where a passenger who has lost his ticket, or where through mistake the wrong ticket his been delivered to him, will be obliged to pay his fare a second time in order to pursue his

journey without delay, and if unable to do this, as will sometimes be the case, very great delay and injury may result therefrom. Such delay and injury would not be the natural result of the loss of a ticket or breach of the contract, but would be, at least in part, in consequence of the pecuniary circumstances of the party. Such cases are exceptional, and however unfortunate the party may be who is so situate, yet we must remember that no human rule has ever yet been devised that would not at times injuriously affect those it was designed to accommodate." Proceeding further, the learned judge says: "How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad company where a ticket is purchased and presented to him? Practically there are but two ways—one, the evidence afforded by the ticket; the other, the statement of the passenger, contradicted by the ticket. Which should govern? In judicial investigations we appreciate the necessity of an obligation of some kind and the benefit of a cross-examination. At common law parties interested were not competent witnesses, and even under our statute the witness is not permitted, in certain cases, to testify as to facts which, if true, were equally within the knowledge of the opposite party, and he cannot be procured. Yet here would be an investigation as to the terms of a contract, where no such safeguards could be thrown around it, and where the conductor, at his peril, would have to accept the mere statement of the interested party. I seriously doubt the practical workings of such a method, except for the purpose of encouraging and developing fraud and falsehood, and I doubt if any system could be devised that would so much tend to the disturbance and annoyance of the traveling public generally. There is but one rule which can safely be tolerated with any decent regard to the rights of railroad companies and passengers generally.

As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as the evidence of his right to the seat he claims. Where a passenger has purchased a ticket and the conductor does not carry him according to its terms, or, if the company, through the mistake of its agent, has given him the wrong ticket, so that he has been compelled to relinquish his seat, or pay his fare a second time in order to retain it, he would have a remedy against the company for a breach of the contract, but he would have to adopt a declaration differing essentially from the one resorted to in this case."

It will be observed that in that case the right to recover was rested solely upon the ground that the contract made by the passenger with the ticket agent entitled him to ride to a destination beyond the point called for by the ticket, and no charge was made that greater force or violence than was necessary was used by the officers of the carrier in ejecting the passenger from the train; and it was therefore held that there was no proof of the case alleged.

In a note to *Commonwealth* v. *Powell* (Mass.), 41 Am. Dec. 475, Mr. Freeman states that the rule is that the passenger "should either pay the fare demanded or quit the train; and in either case we think he ought to recover, as a part of his damages, reasonable compensation for the indignity put upon him by the company through the default of its servant. But he can add nothing to his claim by remaining in the car until forcibly ejected, for the rule under which he is ejected, being reasonable, is a complete protection to the company and its servants against the recovery of any damages, directly or indirectly, for the assault made necessary by his own obstinacy, if no more violence than is required for his ejection is used. Such a case stands upon an entirely different ground from that of a

passenger who has a proper ticket and is, nevertheless, ex-
pelled."

In Baldwin's American Railroad Law, 292-93, it is said:
"But, as between the passenger and the conductor of the car in
which he is, the terms of the ticket or check are conclusive, and
the right to ride upon it on that train is, for the time being,
to be determined accordingly. . . .   In any of these cases
where the ticket varies from the true contract, if the passenger
is ejected, the conductor commits no trespass; but the company
is liable to an action for breach of the contract.   The damages
for this breach will not be aggravated by the expulsion from the
car.   The plaintiff should have left it voluntarily."

The same rule is stated at length in 4 Elliott on Railroads,
section 1594.   See, also, *Bradshaw* v. *South Boston R. Co.*
(Mass.), 46 Am. Rep. 481; *McKay* v. *Ohio River R. Co.,* 34
W. Va. 65, 11 S. E. 737, 9 L. R. A. 132, 26 Am. St. Rep. 913;
*Moshur* v. *St. Louis R. Co.,* 127 U. S. 390, 8 Sup. Ct. 1324,
32 L. Ed. 249.   Many more authorities could be cited in sup-
port of the view taken in *Frederick* v. *Marquette, &c., R. Co.,*
*supra,* but we deem it unnecessary.

It is contended, however, on behalf of the plaintiff, that
*Frederick* v. *Marquette, &c., R. Co., supra,* has been over-
ruled by the subsequent case of *Hufford* v. *G. R. & I. R. Co.,* 64
Mich. 631, 31 N. W. 544, 8 Am. St. Rep. 859, but that con-
tention cannot be sustained.   The case of *Hufford* v. *G. R. & I.
R. Co.* was twice before the Supreme Court of Michigan, being
reported first in 53 Mich. 118, 18 N. W. 580, wherein the
opinion by Cooley, C. J., expressly approves the decision in
*Frederick* v. *Marquette, &c., R. Co.,* and holds that the ticket
was conclusive of the extent of the passenger's right to ride,
when the final destination was manifest on the face of the
ticket, though a different result was reached in the case from

that which was arrived at in *Frederick* v. *Marquette, &c., R. Co.,* because the facts were different.   In the latter case the passenger was attempting to ride beyond the destination mentioned on the ticket, while in the Hufford case the ticket was good on its face to his destination.   In *Hufford* v. *G. R. & I. R. Co.,* 53 Mich. 118, 18 N. W. 580, the opinion by Cooley, C. J., says: "In *Frederick* v. *Marquette, &c., R. R. Co.  .  .  .* it was decided that, as between the conductor and the passenger, the ticket must be the conclusive evidence of the extent of the pasenger's right to travel.   No other rule can protect the conductor in the performance of his duties, or enable him to determine what he may or may not lawfully do in managing the train and collecting the fares.   If, when a passenger makes an assertion that he has paid fare through, he can produce no evidence of it, the conductor must at his peril concede what the passenger claims, or take all the responsibilities of a trespasser if he refuses, it is easy to see that his position is one in which any lawless person, with sufficient impudence and recklessness, may have him at disadvantage, and where he can never be certain, if he performs his apparent duty to his employer, that he may not be subjected to severe pecuniary responsibility.   Such a state of things is not desirable, either for railroad companies or for the public.   The public is interested in having the rules whereby conductors are to govern their action certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without the proper evidence of his right to a passage, though he has paid for it, it is better that he submit to the temporary inconvenience than that the business of the road be interrupted, to the general annoyance of all who are upon the train.   The conductor's duty, when the passenger is without the evidence

of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him. The passenger gains nothing by being put off the car, and loses nothing by paying what is demanded and staying on.

"The plaintiff, therefore, in this case, if it was found that the ticket he held was not good by reason of former use and cancelment, should have paid his fare when it was demanded, and looked afterwards to the railroad company for the refunding of the money, and for compensation for any trouble he might be put to in obtaining it. . . . But we are all of opinion that if the plaintiff's ticket was apparently good, he had a right to refuse to leave the car."

The same rule was upheld in the later case of *Mahoney* v. *Detroit Street R. Co.,* 93 Mich. 612, 53 N. W. 793, 18 L. R. A. 335, 32 Am. St. Rep. 528.

Unquestionably there is a great conflict of authorities as to what should be the controlling rule in such cases, and we have been cited to a number of them by plaintiff's counsel which take the opposite view, but we do not deem it necessary to review them at length, as, in our opinion, the more satisfactory and safe rule is that adhered to in the line of cases beginning with *Frederick* v. *Marquette, &c., R. Co., supra.*

Under this rule the defendant's conductor in this case had the right to eject the plaintiff, and the ejection, of itself, was not wrongful or tortious, and no suit for tort could be maintained unless undue force or violence accompanied the ejection, his remedy being in an action for a breach of the contract with defendant's agent at Clinchport, where plaintiff called for and paid for a ticket to Appalachia; but, as we said in the outset, an action of tort may be maintained if undue force or violence was used in ejecting the plaintiff.

This brings us to the consideration of the question whether or not the case was fairly submitted to the jury by the instructions given by the court below.

There is considerable conflict of testimony as to the language and bearing of the plaintiff and the conductor, respectively, both inside and out of the car, and also as to the treatment the plaintiff received at the hands of the conductor and the passenger who assisted him, after the plaintiff was ejected. The plaintiff himself admits that if he had left the train without resistance when the conductor stopped it and ordered him to leave, he would have been subjected to none of the subsequent insults and injuries of which he complains. The question, therefore, is whether the plaintiff could recover anything for injuries or insults which he received subsequent to his refusal to leave the car and consequent upon his resistance or misconduct.

The court was asked to tell the jury that the plaintiff could not recover for damages which he sustained as the result of his own negligence or wrongful act alone, or as the result of a concurrence of his own negligence or wrongful act with the negligence or wrongful act of the defendant; and was also asked to tell the jury that the plaintiff could not recover in this action for any injuries to which his own negligence or default proximately contributed. It clearly appears that there was no wilful wrong done to the plaintiff, nor wilful injury or insult offered to him until after he himself, by his resistance of the conductor, had precipitated the struggle and the altercations which ensued.

We think that the jury should have been so instructed. If the defendant had the right to eject the plaintiff from the car, he surely should not be entitled to recover for injury or insult made necessary by his own wrongful conduct. It is true that

the court did, after refusing all instructions based on this theory, give an instruction which told the jury that the defendant was not liable for any injury or damage which resulted to the plaintiff from his resistance, unless the defendant used more force than was necessary to overcome such resistance; but we do not think this cured the error committed by the court in refusing to give defendant's instructions "A" and "G," which were as follows:

"A"

"The court instructs the jury that if a railroad ticket, by mistake of the agent who issued it, does not conform to the contract which in fact was made, nevertheless, as between the passenger and conductor, the terms of the ticket are conclusive, and the right of the passenger to ride on the train is to be determined by the face of the ticket; and if the conductor ejects the passenger by reason of such passenger's failing to recognize the terms of the ticket, using only such force as is necessary to eject him, the conductor commits no tort or trespass, and the passenger is limited, in any suit for such ejectment, to such damages, and only such damages as resulted proximately from the agent's mistake, and cannot recover for damages which he sustains as the result of his own negligence or wrongful act alone, or as the result of a concurrence of his own negligence or wrongful act with the negligence or wrongful act of the defendant."

"G"

"The court instructs the jury that the plaintiff cannot recover in this action for any injuries to which his own negligence or default proximately contributed."

The evidence tended to show that the plaintiff not only re- sisted all efforts to eject him from the car, but used profane language in the presence of the other passengers, including ladies, and that the kick which he received from Moss in his mouth was the outcome of an altercation between him and Moss in the absence of the conductor, who had gone back into the car to get plaintiff's valise.

In *Coleman* v. *N. Y. & N. H. R. Co.,* 106 Mass. 160, which was an action against a railroad corporation for assault and battery of the plaintiff in expelling him from a car where he was wrongfully, the defendants contended that the force they used was necessary to overcome the force used by him to resist expulsion, and he contended that the force he used was neces- sary to resist the blows they struck him. The jury were in- structed that this was so, if they could make the distinction upon the evidence; but left them to infer that the burden was on the defendants to establish it. *"Held:* That the omission to guard the instruction against such an inference gave the defendants good ground of exception"; and that "in an action against a railroad corporation for blows struck upon the plaintiff by its servants in removing him from a car from which they had a right to expel him, it is a question of fact for the jury whether the blows were struck in the exercise of justifiable force to effect the expulsion and overcome force with which he was resisting it." If assistants employed by the conductor of a railroad train to expel a person from the car strike him unjustifiably in expelling him, the railroad corporation is liable, although the blows were struck against the conductor's order."

The trouble with the instructions given in this case is that they do not distinguish between the force used in ejecting the plaintiff from the car, made necessary by his resistance, and the injuries he received after having been ejected from the car,

thereby misleading the jury to understand that in assessing damages to the plaintiff they had a right to take into consideration both the force used in ejecting him from the car made necessary by the plaintiff's resistance and the injury and insults he received after he had been ejected from the car.

"It is the duty of a passenger, if he has not the required ticket or token evidencing his right to travel on that train, to pay his fare or quietly leave the train when requested, and resort to his appropriate remedy for the damages he has sustained; and if he attempts to retain his seat, without paying his fare, and is expelled by the conductor, using no more force than is necessary, he can recover no damages for the injury incurred by such expulsion." *Peabody* v. *Oregon Ry., &c., Co.,* 12 L. R. A. 823, and note. See, also, *McGowan* v. *Morgan & La. R. Co.,* 5 L. R. A. 17, and note, p. 820.

In such a case it is essential that the instructions to the jury be not such as to mislead them into a failure to distinguish between the force used in ejecting the passenger, made necessary by his resistance and own misconduct, and force or violence used by the officers or agents of the railroad company not made necessary by the passenger's resistance or misconduct.

We are, therefore, of opinion that the court below erred in not giving defendant's instructions "A" and "G."

There are other exceptions taken to the rulings of the trial court, but we do not deem it necessary to consider them, as some of the questions presented may not arise at the next trial; and should the evidence be practically the same as at the last the instructions then given by the court, together with defendant's instructions "A" and "G" will, we think, fairly submit the case to the jury.

The judgment of the Circuit Court will be reversed and annulled, and the cause remanded for a new trial.

*Reversed.*