## Staunton.

## LOUISVILLE AND NASHVILLE RAILROAD COMPANY V. RIELY.

### September 20, 1917.

1. CARRIERS—*Tickets and Fares—Time Limit.*—In general, it may be said that a time limit on a railroad ticket may be, at the same time, both a contract of carriage between a passenger and carrier, and a regulation of the carrier for the conduct of its business.

2. CARRIERS—*Tickets and Fares—Time Limit.*—Primarily, the function of a ticket is to serve as evidence as between the conductor of the carrier's train and the passenger of the latter's right to transportation. When a ticket is serving such function, the time limit contained on it (whether on its face, or back, or within its folds, is immaterial) is a regulation of the carrier for the conduct of its business, the validity of which is to be determined upon the sole inquiry of its reasonableness as such regulation, and not upon any inquiry as to its validity as a contract between a passenger and carrier.

3. CARRIERS—*Tickets and Fares—Time Limit—Case at Bar.*—Where, as in the instant case, a train of the carrier runs daily, from the place of departure to the place of destination of the passenger, and there is no statutory regulation on the subject, or regulation of somebody having authority in the premises, such as the State Corporation Commission, to the contrary, a time limit in the following language: "Good continuous passage beginning date of sale only on train scheduled to stop at destination, otherwise passenger transfer to local train," printed on the face of a regular first-class ticket, is a reasonable regulation and valid.

4. CARRIERS—*Tickets and Fares—Ticket as Contract.*—A railroad ticket being delivered to the passenger to be used for its primary function to serve as evidence, as between the conductor and the passenger, and being accepted and so used by him, may also afford evidence of the contract of carriage between the passenger and carrier to the extent that such contract is expressed by the ticket, if the passenger knowingly assents to the matters so expressed.

5. CARRIERS—*Tickets and Fares—Usages and Customs.*—Custom and usage may have an important bearing on whether stipulations on a ticket may, in particular cases, constitute a contract, as well as at the same time serve in part the primary function of a ticket.

6. CARRIERS—*Tickets and Fares—Ticket as Contract.*—Where there exists evidence of actual knowledge on the part of the passenger of the stipulations on the ticket, and acquiescence therein, there can be no question that the ticket evidences a contract as well as serves its primary function as evidence as between the conductor and the passenger.

7. CARRIERS OF PASSENGERS—*Baggage—Limitation of Liability.*—The liability of a carrier of baggage is, at common law, that of an insurer, and the carrier's liability with respect to the baggage of the passenger can only be limited by express contract between the passenger and carrier. It cannot be done by notice or any *ex parte* regulation of the carrier, however reasonable. And an *ex parte* stipulation on a ticket limiting the common-law liability of a carrier with respect to the baggage of the passenger, is no evidence of a contract in the absence of all evidence of any knowledge or assent to it by the passenger, at the time the ticket was purchased.

8. APPEAL AND ERROR—*Judgment by Appellate Court.*—Where it is evident that a new trial will not avail the plaintiff anything, the Supreme Court of Appeals will enter such judgment as the court below should have entered in favor of the defendant.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

STATEMENT OF THE CASE AND FACTS

In this action of trespass on the case the defendant in error was plaintiff and the plaintiff in error was defendant in the court below. They will be hereinafter referred to as plaintiff and defendant.

The action was brought to recover damages for the alleged wrongful ejection of the plaintiff from a passenger train of the defendant by the conductor of the latter.

## THE FACTS.

The facts of the case appear from the agreed statement between the parties, which is as follows:

"For the purpose of saving time and costs, the parties hereto have agreed, and do hereby agree, that the following statements are facts, and are all the facts which either party hereto will rely upon at the trial of this case:

"(1) That the defendant is and was a common carrier of passengers, as alleged in the declaration, from the town of Norton, in Wise county, Virginia, to and beyond the town of Appalachia, in said county, and that its line of road between the said towns is entirely within said county.

"(2) That the plaintiff, on October 15, 1915, purchased from the defendant's ticket agent at Blackwood, which is a station on defendant's line between said towns of Norton and Appalachia, a regular ticket from Blackwood to Appalachia, with the intention of making the trip on defendant's train that day, but did not make the trip. On the following evening he went aboard defendant's regular passenger train at Norton, to which place he had gone in the meantime, with the purpose of going on said train to Appalachia. He had purchased at Norton one of defendant's regular tickets from Norton to Blackwood, which he gave to the train conductor on leaving Norton. Immediately after the train left Blackwood he tendered to the conductor the ticket from Blackwood to Appalachia, which he had purchased from the defendant on the day before, as above set forth, which ticket is hereto attached, marked "Exhibit Ticket." This ticket the conductor refused to accept, giving as his reason for so doing that his instructions from the defendant required him to refuse to accept such tickets, except when tendered on the date of sale, and he demanded of the plaintiff other fare. Plaintiff insisted upon his right to be carried on said ticket, and refused to pay other fare, whereupon the conductor

ejected him from the train at a point about one mile west of Blackwood. The ejection was without force and no abusive language was used, by the conductor. The conductor stopped the train and the plaintiff left the train under protest.

"(3) That the said ticket was one of the regular tickets used by the defendant in its regular, daily passenger business, and that the plaintiff paid the defendant therefor at its regular and legally established rate, the amount being $0.18.

"(4) That the said train upon which the plaintiff was being carried at the time of his ejection was scheduled to stop at said town of Appalachia.

"(5) That after the train left Norton on the occasion mentioned and before it reached Blackwood and at the time the conductor took up plaintiff's ticket from Norton to Blackwood plaintiff also handed the conductor his said ticket from Blackwood to Appalachia, but the conductor then and there returned to him the last named ticket, telling him that it was out of date and that he could not honor it, but the plaintiff would have to get another ticket at Blackwood, or pay cash fare from Blackwood to Appalachia, or get off at Blackwood. After the train started from Blackwood plaintiff again tendered said ticket to the conductor and refused to pay cash fare. At the time plaintiff purchased said ticket on October 15, 1915, he did not notice and had no knowledge of the conditions printed on said ticket with reference to the limitation of the time for its use and said condition was not brought to his notice by the defendant or any one else until the conductor called his attention to the ticket and the date thereon at the time and place above stated.

"(6) That the amount of damage sustained by the plaintiff by reason of said ejectment is the sum of $350.00.

"(7) It is further agreed in this case that the whole matter of law and of fact may be heard and determined and

judgment given by the court without the intervention of a jury and if the court find for the plaintiff it shall enter judgment for the said sum of $350.00 and costs."

"EXHIBIT TICKET."
"Louisville & Nashville R. R. Co.,
Blackwood, Va., to Appalachia, Va.

"Good continuous passage beginning date of sale only on train scheduled to stop at destination, otherwise passenger transfer to local train. Baggage liability limited $100 adult's ticket, $50 child's ticket, unless greater value declared and excess rate paid, according to tariff's regulations.

R. D. PUSEY,
Gen. Pass. Agt.

"Endorsed on back as follows:
L. & N. R. R.
    Oct. 15, '15.
Blackwood, Va."

There was a judgment of the trial court in favor of the plaintiff for $350.00 with interest thereon from April 4, 1917, until paid and costs, and the defendant assigns error.

*Irvine & Stuart,* for the plaintiff in error.

*C. R. McCorkle,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court:

The assignments of error in the petition in this case raise a single question for our determination, namely:

1. Was the time limit, "Good (for) continuous passage beginning date of sale only," printed on the face of the regular first class ticket in the instant case, valid?

It will be observed that the question of the validity of the time limit referred to, arises in this case upon the inquiry whether the defendant is liable in damages for the conduct of its conductor in ejecting plaintiff from its train. That is to say, the action is not upon a contract of carriage, but in tort for the conduct of the carrier through its conductor in ejecting the alleged passenger.

In the instant case this distinction could not have had any practical effect on the result of the case if it had been an action for breach of contract, but it has a material bearing upon and brings into view more clearly, the principle involved, as we shall presently see.

It will be noted that in the case before us the plaintiff had no actual knowledge or notice of the time limit in question until after he bought and received the ticket. It is contended for plaintiff that his rights in the premises are contractual—fixed by the contract of carriage between carrier and passenger; and that, therefore, the time limit, although printed on the face of the ticket, could not form a part of such a contract or bind the plaintiff, unless he had actual notice of it, and acquiesced therein, at the time the contract of carriage was made.

On the other hand it is contended for the defendant that the time limit in question was not a matter of contract between the passenger and carrier, but a regulation merely of the carrier for the conduct of its business, the validity of which is to be determined upon the sole inquiry of its reasonableness as such regulation, and not upon any inquiry as to its invalidity as a contract between a passenger and carrier.

Upon these different positions the authorities are in considerable seeming, and some real, conflict.

In general, it may be said that a time limit on a railroad ticket may be, at the same time, both a contract of carriage between a passenger and carrier, and a regulation of the

carrier for the conduct of its business. Elliott on Railroads, sec. 1593, 1594, 1598, and the numerous authorities cited As sometimes expressed, it may at the same time be "both a receipt and a contract." *Richmond, F. & P. R. Co.* v. *Ashby,* 79 Va. 130, 52 Am. Rep. 620.

Primarily, the function of a ticket is to serve as evidence, as between the conductor of the carrier's train and the passenger, of the latter's right to transportation. When a ticket is serving such function, the time limit contained on it (whether on its face, or back or within its folds, is immaterial) is a regulation of the carrier for the conduct of its business, the validity of which is to be determined upon the sole inquiry of its reasonableness as such regulation, and not upon any inquiry as to its validity as a contract between a passenger and carrier. Elliott on Railroads, *supra,* and authorities there cited, among the latter *Peabody* v. *Oregon, etc., Co.,* 21 Ore. 121, 26 Pac. 1053, 12 L. R. A. 823, and note; *Frederick* v. *Marquette, etc., R. Co.,* 37 Mich. 342, 26 Am. Rep. 531; *Yorton* v. *Milwaukee, etc., R. Co.,* 54 Wis. 234, 11 N. W. 482, 41 Am. Rep. 23; *Bradshaw* v. *So. Boston R. Co.,* 135 Mass. 407, 46 Am. Rep. 481, and note. See also to the same effect, *Va. & S. S. R. Co.* v. *Hill,* 105 Va. 729, 54 S. E. 872, 6 L. R. A. (N. S.) 899, and authorities cited on this subject; *Elmore* v. *Sands,* 54 N. Y. 512, 13 Am. Rep. 617. When the question of the validity of a stipulation appearing on a railroad ticket with respect to the passenger's right of transportation arises, in an action against the carrier in tort for ejection of the passenger by the conductor of the carrier, on principle, and in accordance with the great weight of authority, the ticket is regarded as serving its primary function aforesaid, and the ticket is considered as the only evidence as between the conductor and passenger of the latter's right of transportation. *Va. & S. W. R. Co.* v. *Hill, supra;* Elliott on Railroads, sec. 1594 and authorities cited, among them the opinion of Taft, J. in

*Poulin* v. *Canadian Pac. R. Co.*, 52 Fed. 197, 3 C. C. A. 23, 17 L. R. A. 800; *Frederick* v. *Marquette, etc., Co., supra;* and note of Judge Freeman, 41 Am. Dec. at p. 475. Where, as, in the instant case, a train of the carrier runs daily, from the place of departure to the place of destination of the passenger, and there is no statutory regulation on the subject, or regulation of some body having authority in the premises, such as the State Corporation Commission, to the contrary, such a time limit as in the instant case is held by all the authorities to be a reasonable regulation. Elliott on Railroads, sec. 1598 and authorities cited.

We consider the foregoing considerations upon principle, and the authorities referred to, decisive of the instant case in favor of the defendant.

It is true, as above noted, that a railroad ticket being delivered to the passenger to be used for its primary function aforesaid, and being accepted and so used by him, may also afford evidence of the contract of carriage between the passenger and carrier to the extent that such contract is expressed by the ticket, if the passenger knowingly assents to the matters so expressed. The very fact that the passenger knows the primary function aforesaid of the ticket and that he takes it to be used by him to serve such function, and so uses it, in the minds of some courts implies an assent on the part of the passenger to the stipulations on the ticket with respect to his rights of transportation (an implied meeting of the minds of the contracting parties being held to exist in such cases), and hence the ticket is held to evidence a contract between the passenger and carrier to the extent of such stipulations. *Grogan* v. *C. & O. Ry. Co.*, 39 W. Va. 415, 19 S. E. 563; *Freeman* v. *Atchison R. Co.*, 71 Kan. 237, 80 Pac. 592, 6 Ann. Cas. 118; and numerous like cases. Custom and usage may also have an important bearing on whether such stipulations on a ticket may, in particular cases, constitute a contract as aforesaid, as well

as at the same time serve in part the primary function of a ticket. 12 Cyc. p. 1058. In other cases, there exists evidence of actual knowledge on the part of the passenger of the stipulations on the ticket, and acquiescence therein, in which cases there can be no question that the ticket evidences a contract as aforesaid, as well as serves its primary function aforesaid. *Trezona* v. *Chicago, etc., R. Co.,* 107 Iowa 22, 77 N. W. 486, 43 L. R. A. 136, and numerous like cases. There are also classes of cases of special reduced rate tickets, mileage books, and the like, where there is an express contract between the passenger and carrier. In the classes of cases referred to above in this paragraph, naturally the courts discuss the subject of the stipulations aforesaid on the ticket from the standpoint of a contract. There are, too, cases where the conductor of the carrier himself violates the stipulation aforesaid contained on the ticket, as where a passenger holds a ticket sold him by the carrier which stipulates on its face that he has the right of transportation to a station named thereon, and the conductor refuses to stop the train at such station. *R. F. & P. Co.* v. *Ashby,* 79 Va. 130, 52 Am. Rep. 620. In such cases the ticket is very naturally and properly referred to as evidencing the contract between the carrier and the passenger. There is nothing in such classes of cases in conflict with the holding as to the primary function of a ticket by the great weight of authority aforesaid and as to this being the function which the ticket and the time limitation on it serves in cases of the class of the instant case. In the former classes of cases their facts render it unnecessary for the question we have under consideration to arise. It is doubtless true, however, that the failure of the courts in some of the cases referred to, to advert to the true principle involved, resting upon the distinction as to the primary function of a railroad ticket aforesaid, has produced considerable apparent confusion among the authorities not in truth existing.

There are, however, a few cases where the conflict in the authorities really exists, such as those of *L. & N. R. Co. v. Turner,* 100 Tenn. 213, 47 S. W. 223, 43 L. R. A. 140; *Norman* v. *So. Ry. Co.,* 65 S. C. 517, 44 S. E. 83, 95 Am. St. Rep. 809; *Dagnall* v. *So. Ry. Co.,* 69 S. C. 110, 48 S. E. 97, and *Norman* v. *E. C. Ry. Co.,* 161 N. C. 330, 77 S. E. 345, Ann. Cas. 1914 D, 917, which hold that the time limitation on a railroad ticket is a matter of contract and not a matter of regulation of the carrier for the conduct of its business; and, further, that the assent of the passenger to such a stipulation on a ticket will not be implied from his acceptance and use of the ticket, but actual notice of such stipulation must be shown to have been received by the passenger at the time he bought the ticket to render the stipulation valid. But these cases are, as aforesaid, against the great weight of authority and not in accord with what we conceive to be the true principle involved, as aforesaid, and hence we cannot follow them.

The case of *Wilson* v. *C. & O. Ry. Co.,* 62 Va. (21 Gratt.) 654, is cited and urged upon our attention as controlling authority over the instant case. That case, however, involved the validity of a stipulation on the ticket limiting the common law duty and liability of the carrier with respect to the baggage of the passenger. This could be done only by express contract between the passenger and carrier. It could not be done by notice or any *ex parte* regulation of the carrier however reasonable. Hence, the existence of a contract was necessary in that case to sustain the validity of the stipulation on the ticket, and this court properly held that the *ex parte* stipulation was no evidence of a contract in the absence of all evidence of any knowledge or assent to it by the passenger, at the time the ticket was purchased. The liability of a carrier of baggage is, at common law, that of an insurer. The liability of a carrier of passengers is not that of an insurer. The same rules as to liability do not

apply to both. *Central R. Co.* v. *Lippman,* 110 Ga. 665, 36 S. E. 202, 50 L. R. A. 673. It is not deemed necessary to develop here the further distinctions involved. It is deemed sufficient to say that for the reasons mentioned and indicated the baggage liability cases are not authority on the question involved in the instant case.

For the foregoing reasons we find that there was error in the judgment complained of and the case must be set aside and annulled; and since it is evident that a new trial would not avail the plaintiff anything, this court will enter such judgment as the court below should have entered in favor of the defendant.

*Reversed.*