# THIRD DISTRICT, OCTOBER, 1897.

Gulf Colorado & Santa Fé Railway Company v. W. N. Copeland.

Decided October 20, 1897.

### 1. Damages—Ejection of Passenger—Humiliation—Evidence.

In support of a claim of a passenger to recover damages for the "humiliation" from being wrongfully refused transportation, it was not proper to permit proof that some time afterwards a third person had "guyed" plaintiff about being put off the train.

### 2. Argument of Counsel.

Comment by plaintiff's counsel upon the appearance and demeanor of the defendant's conductor, who had put plaintiff off the train, but who was not a witness nor before the jury, was improper, and under the evidence in this case, the verdict appearing too large, could not be held to be harmless.

### 3. Charge—Exemplary Damages.

There was no error in refusing an instruction requested by defendant on the subject of exemplary damages where only actual damages were claimed by the pleadings or allowed by the court.

### 4. Passenger—Contract—Ticket Not Conclusive.

The ticket or pass, its form being prescribed by the carrier, does not in all cases determine the passenger's right to transportation nor prevent an inquiry into the actual contract between him and the carrier's agent.

### 5. Passenger—Reducing Damages by Payment of Fare.

A passenger who has entered into a contract entitling him to transportation can rest on his rights under such contract, and is not required to pay fare again in order to lessen the damages occasioned by ejection from the train in violation of his rights under the original contract.

Appeal from the County Court of Runnnels. Tried below before Hon. C. H. Willingham.

*J. W. Terry* and *Chas. K. Lee,* for appellant.—1. Any vexation or humiliation that plaintiff may have experienced as a result of persons "guying" him long after his ejection, was certainly not an element of damage in the case, and the evidence was improper and should have been withdrawn from the jury. Goodhart v. Railway, 35 Atl. Rep., 191.

Attorneys have the right to argue their cases before the jury; they also have the right to take the stand and testify to any facts material to the case; but they have no right to avail of a closing argument to go out of the record and in effect give evidence and deprive the opposing party of the protection of (1) an oath; (2) the penalties directed against perjury; (3) cross-examination; and (4) the rules of law excluding irrelevant and immaterial evidence. Tel. Co. v. Wingate, 6 Texas Civ. App., 394; Willis v. McNeill, 57 Texas, 465; Fordyce v. Withers, 1 Texas Civ. App., 540; Railway v. Scott, 7 Texas Civ. App., 619; Mill Co. v. Hobbs, 5 Texas Civ. App., 34; Water-works Co. v. Harris, 3 Texas Civ. App., 475.

2. It is the duty of a person injured by the wrong of another to use all reasonable efforts to reduce his damages to the minimum. Express notice on the face of the contract charged the plaintiff with the duty of seeing that his transportation was properly provided for. In the light of this notice, even if it be held that he can stand on his original contract with the agent at Navasota, he was not entitled to recover the damages that might have been saved by having the contract properly indorsed before he left Ballinger. If he voluntarily paid his fare the next day, after the ejection, in order that he might preserve his contract for the purposes of a suit, when he knew that he could have had the contract fixed up and so have saved the fare, he clearly was not entitled to recover the fare so paid. Railway v. Cleveland, 33 S. W. Rep., 687; Railway v. McFadden, 25 S. W. Rep., 451; Railway v. Ryan, 18 S. W. Rep., 866; Railway v. Florence, 4 Willson's C. C., sec. 38.

No brief for appellee reached the Reporter.

FISHER, CHIEF JUSTICE.—This was a suit by appellee Copeland against the railway company to recover damages resulting from the wrongful removal of the appellee by the conductor from a passenger train, while a passenger. There is a verdict and judgment in plaintiff's favor for $215. It appears from the facts, that the appellee on the 27th of March, 1895, at Navasota, Texas, made a contract with the appellant's agent to ship nine cars of cattle from Navasota to Ballinger, Texas, and that as a part of that contract it was agreed that he should be furnished transportation to Ballinger and return to Navasota. There was a contract in writing executed between the parties, stating the terms of shipment of the cattle, and upon the back of it was stated the contract that entitled the appellee to transportation as a passenger. The terms of this contract required that appellee's name should be signed in the body of the pass that entitled him to transportation from Navasota to Ballinger, and that his name should also be signed in that part of the pass that entitled him to transportation from Ballinger to Navasota. His name was properly signed to that part of the contract of transportation from Navasota to Ballinger, but was omitted from that part of the contract that evidenced his right of transportation from Ballinger to Navasota.

After his arrival at Ballinger, he boarded the train there for the return trip to Navasota. Upon leaving Ballinger, he was approached by the conductor, who demanded his ticket, and he thereupon presented his contract of transportation. The conductor, for the reason that his name did not appear as the party entitled to transportation from Ballinger to Navasota, declined to accept the pass, and demanded of him the payment of his fare. This the appellee declined to pay, and the conductor told him that he would have to get off. Thereupon the appellee requested that the train be stopped and he be permitted to get off. Just before alighting from the train, he requested the conductor to back the train to Ballinger, in order that the ticket agent there might correct the mistake, so that he

could use his contract as a pass. This the conductor refused to do. Appellee, the only witness in the case, testified that the conductor spoke to him in a cross and gruff manner, but he thinks that was his usual manner; that there were several passengers on the train, and that he felt somewhat embarrassed in being compelled to get off the train at a point about two miles from town, in the night time, where there was no station, and that he felt that on account of being put off the train he was subject to ridicule and criticism; and says that, when put off the train, he walked back about a half· a mile to a friend's house and went to bed and slept until breakfast. He then walked home, which was about two miles. The next morning he took the train for Navasota and bought a ticket, paying an additional fare of $8.75, and he lost one day's time by reason of being put off the train, which he testified was worth $25. There is no other evidence tending to show any injuries, mental or physical, sustained by him, or that he sustained damages in any other sums except those stated. The witness also stated that he never examined the pass after it was delivered to him, and, in fact, that he did not know that the agent at Navasota had made a mistake until it was pointed out to him by the conductor.

On the trial of the case the plaintiff Copeland was permitted to testify, "that some time after the accident Phillip Wilson guyed him in Ballinger about having been put off the train," which evidence was objected to. The appellant also complained of the argument of one of the counsel for appellee in his address to the jury, wherein he stated: "Gentlemen of the jury, I wish you knew this man Campbell that was conductor of that train; I do wish this defendant had brought him here and put him on the witness stand. They knew better than to do that. I just wish you could have seen how mean looking he is. I wish you could have seen and heard him testify and witness his manner on the witness stand. You might then have formed some conception of the feelings which plaintiff experienced when he came in contact with him on this occasion." Campbell, the man mentioned by counsel in his argument, was the conductor in charge of the train which the appellee was required to leave. Campbell was not a witness in the case.

We think it was error for the court to admit evidence of what occurred between Phillip Wilson and the appellee; and also, in view of the amount awarded to plaintiff, that the remarks of the counsel were improper. If Campbell had been a witness before the jury, counsel could have commented upon his conduct, and possibly upon his appearance and upon his evidence, but his speaking to the jury as to how Campbell looked and his comments· upon his appearance were unwarranted, and were calculated to convey to the mind of the jury that Campbell, who stood as the representative of the appellant and for whose acts it was responsible, was mean enough to needlessly wound the feelings of the plaintiff, without any apparent reason or cause.

We have searched the record closely, in order that we may find evidence which would authorize the jury to assess the damages at the amount of

$215. It is true that if the contract of transportation was violated by reason of the tort and the invasion of the civil rights of the passenger by the carrier, and he was wrongfully required to leave the train, appellee would be entitled to compensation for the loss of time and the extra fare he was required to pay, if he was so required to pay it, in order to be transported to Navasota, and would be entitled to some compensation for the humiliation and inconvenience he was put to, and we freely concede that, upon these two last items, it is a matter that to a great extent rests within the sound discretion of the jury; but, in view of the evidence tending to show the slight disturbed condition of the mind and the small degree of inconvenience to which he was put, it is difficult to arrive at a conclusion, in view of the size of the verdict, which would authorize us to hold that the jury were not influenced by the remarks of counsel and the evidence showing what occurred afterwards between the appellee and Wilson. For the errors pointed out, the judgment will have to be reversed.

There was no error in refusing the charge upon the subject of exemplary damages; no claim of that character was made by the pleadings, and the court in his charge expressly confined the jury to a consideration of actual damages.

The court below, in the general charge, correctly stated the rights of the passenger and the liability of the carrier under the contract as agreed upon with the agent of appellant. This court has heretofore in several cases, notably Railway v. Rather, 21 Southwestern Reporter, 957 and Railway v. Halbrook, 33 Southwestern Reporter, 1029, affirmed the doctrine that the ticket or pass does not in all instances furnish the exclusive right to the passenger to transportation, and that under certain circumstances, the contract as actually entered into between the passenger and the agent of the carrier may be looked to in order to ascertain the rights of the passenger. The carrier rests under the duty to the passenger to furnish him with a ticket correctly stating the terms of the contract, and the passenger can, in the absence of actual notice to the contrary, assume that this duty has been observed, and in such a case he will not be charged with the duty of inspecting the ticket in order to see that the carrier has performed its duty. This is essentially a fair rule, for the passenger has little if any authority in prescribing the form of the ticket and what it shall state in substance. The carrier reserves to itself the right to furnish the ticket and what it shall state, and when the carrier retains this right without granting an equal privilege to the passenger to participate in furnishing the evidence of his right of transportation it is nothing but fair that the passenger should not be made to suffer for any mistake or failure of duty upon the part of the carrier in furnishing him with a ticket embracing the true terms of the contract. The general rule that one shall be governed by the terms of the written contract which he is a party to, and is presumed, in becoming a party to it, to understand and assent to all of its terms, does not always apply in cases of this character; for, in truth, whatever may be the theory to the contrary, the passenger and the carrier do not always stand upon an equal footing. A

ticket which seeks to contravene or limit the rights of the passenger, as agreed upon in the contract actually made, is an unreasonable imposition, which should receive no more recognition in law than any other unreasonable regulation or contract of the carrier; and those of the latter class are never permitted to go unchallenged or condemned by the courts.

That aspect of the case presented in the special charges given at the request of appellant, to the effect that a passenger whose rights are violated by refusing him transportation under the terms of the contract as really entered into is under the duty of lessening his damages by paying his fare, if he is able to do so, has never been accepted by this court as a rule of law that should apply in this class of cases. A passenger who has entered into a contract for transportation can not be required to pay an additional sum for the right he is already entitled to; having once paid his fare, he can rest his rights upon his original contract, and if there is a breach thereof upon the part of the carrier it can be held to the full consequence thereof, as in any other case of tort that may arise from its negligence. What is here said, in effect, disposes of the remaining assignments.

For the reasons pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*