only be interpreted as meaning that the sale which the defendant had made to the plaintiffs would enable it to enter the English market in competition with Balfour, Guthrie & Co. Not only this, but on the day following, according to the testimony of McGovern, he told Armsby at Boston, over the telephone, that he had cabled to Great Britain and confirmed the sale of the 28,000 cases of salmon, and he was congratulated by Armsby on his success in this respect.

This being the condition of the proof at the close of plaintiffs' case, we do not believe it can be seriously questioned but what it was at least a question of fact for the jury to say whether Stubbs was authorized by the defendant to make the contract which he did. The fact that the plaintiffs took the order instead of the acceptance is of no importance, if, as claimed, it was a mistake. In any view, this, also, was a question of fact. Both parties, it seems, acted upon the assumption that a contract had actually been made, at least until complaints were made to the defendant by Balfour, Guthrie & Co. that the plaintiffs were selling canned salmon, bought from the defendant, in competition with them in the English market, in violation of an agreement which it had as to the sale of canned salmon in Great Britain, and it was then for the first time that the defendant seems to have entertained the idea that no contract had been made.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to the appellants to abide event. All concur.

---

(99 App. Div. 10)

### PARISH v. ULSTER & D. R. CO.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. CARRIERS—MILEAGE BOOKS—MISTAKE IN NAME—EJECTION OF PASSENGER.

    A woman who presented for passage a mileage book made out in the name of Mr. H. M. P., and which provided on its face that it was good only for the person in whose name it was issued, and would be forfeited if presented by any other person, was properly ejected from the train by the conductor on refusal to pay her fare, and the conductor was under no obligation to listen to her explanation to the effect that "H. M." were the initials of her name, which was "P.," and that the "Mr." was a mistake of the railroad's clerk, as the book had been bought for her and paid for with her money.

Appeal from Special Term.

Action by Harriet M. Parish against the Ulster & Delaware Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The defendant was in the habit of selling, at the office in Kingston only, mileage books for use upon its road. One Leroy E. Parish, the husband of the plaintiff, applied to the local agent at Hobart to send and get him a 500-mile book, and gave him $10 with which to pay for it. The book was to be made out to his wife, and he gave the initials "H. M." Parish as her initials. It is provided upon the face of the book that during the months of June, July, and August it is good "only" for the person in whose name it is issued, and shall be taken up and forfeited if presented by any other person. During the other months of the year it is good for use of the family of the person named

---

¶ 1. See Carriers, vol. 9, Cent. Dig. §§ 1423, 1432.

therein. The agent sent the $10 to the office at Kingston, and a book was returned, issued to "Mr. H. M. Parish." The agent delivered the book to Leroy E. Parish, and he delivered it to his wife, on or about the 20th day of May, 1902. As soon as she received it, the plaintiff noticed that it was made out to "Mr. H. M. Parish," and she explained it to the conductor to whom she first presented it, some time in May, that it was intended to be issued to her and not to Mr. Parish, and that she had signed her name at the bottom of it; and that conductor permitted her to ride upon it. Several times afterwards, prior to August 6th, she also rode upon the book. On the last-mentioned date, however, she presented the book to the conductor of a train which she boarded at Hobart, and sought to ride thereon. The conductor declined to receive the book as fare, saying it was issued to "Mr." Parish, and his orders were to enforce the rules of the company; that she must pay her fare or get off of the train. The plaintiff refused to pay, and got off. The next day she wrote to the company, explaining the situation, and on August 8th or 9th she received a letter in reply from the general superintendent, telling her that she should have "declined to receive" the book if it was not properly filled out, that conductors have strict instructions to see that passengers comply with the rules printed on the ticket, and that if she held a ticket issued in the name of "Mr." H. M. Parish the conductor had no right to honor it for her passage, and also telling her that in order to avoid further trouble she should send the ticket to his office for correction. She never sent the book back for correction, nor made any attempt to do so, but on the 23d of August she again took a train at Davenport Centre, which was run by the same conductor that had previously declined to receive the book. He again declined to receive it, and told her that she must get off or pay her fare. She refused to get off, and the conductor put her off. It is very clear from the evidence that he used no more force than was necessary to do so. Her own statement shows that. For being put off of the train upon these two occasions, the plaintiff has brought an action against the defendant for an assault and battery on the part of its conductor. She recovered a verdict at the circuit of $1,000, and from the judgment entered thereon, and from an order denying a new trial, this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Amos Van Etten, for appellant.

W. H. Johnson, for respondent.

PARKER, P. J. The action is for an assault and battery on the part of the conductor for ejecting the plaintiff from the defendant's train. The trial judge charged the jury that she was unlawfully put off, and that the only question for them was the amount of damages which she suffered. Inasmuch as I have reached the conclusion that such instruction was erroneous, no other question need be examined.

On August 6, 1902, the plaintiff got onto the defendant's train at Hobart for the purpose of riding to Davenport Centre. She refused to pay her fare; that is conceded. Unless, therefore, the book which she then presented to the conductor was one that, upon its face, authorized her to be carried upon such train, the conductor was justified in putting her off. Monnier v. New York Central & H. R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619. It seems too clear for discussion that upon its face the book did not authorize her to ride upon it. In the month of August it was good only to those to whom it was issued, and it was not issued to her. Being addressed to "Mr." H. M. Parish, it repels the idea that it was intended for her. And the conductor

was not bound to hear her explanation, and to determine from it whether her money had paid for the book, and, through an error of the defendant's clerk, it had been made out to the wrong party. In the Monnier Case, above cited, it is distinctly held that, even though the fare which the conductor demanded was, as between the traveler and the company, an unlawful exaction, yet it was not unlawfully exacted as between the traveler and the conductor, because he was not in a situation to determine that question. The conductor has the right to rely upon appearances, and, if the ticket or book on its face does not apply to the plaintiff or authorize him to ride upon it, then the conductor may enforce the reasonable rules of the company, even to the extent of ejecting the traveler from the train. It is hardly disputed that, so far as appearances were concerned, this plaintiff had no ticket, or other evidence of any right to ride upon the train in question. She squarely refused to pay the regular and usual fare, and therefore, within the clear authority of the above-cited case, the conductor was justified in putting her off. It makes no difference that the plaintiff had paid her money and was entitled to a book, proper in form, to permit her to ride upon it. She did not have such a book, and therefore she was not in a position to demand being carried without paying fare to the conductor. If she has any claim against the company for issuing the ticket in the wrong name, that question must be determined in a proper action; but it is very clear that she neither had a ticket which authorized the conductor to carry her, nor, as against the conductor, did she have the right to be carried because she had paid for a book that she had not as yet received. The situation was not substantially changed on August 23d, when the plaintiff a second time attempted to ride with this same conductor upon the same book, except that the plaintiff was then assured that under the defendant's rules she could not ride upon that book until she had sent it in to the company's office to be corrected. Clearly the action of the conductor had as full a justification the second time as it had the first.

Without discussing any of the many other questions raised in the case, for the reasons above given the judgment should be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.