CLARA MORRILL v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

February 21, 1908.

Nos. 15,328—(114).

**Street Car—Contract of Carriage.**

A passenger on a street car, who has paid his fare, is by virtue of that fact entitled to ride to the end of a line to which, under the city ordinances, he is entitled to be transferred. The contract of carriage is complete when the fare is paid.

**Duty to Give Proper Transfer Slip.**

Upon demand by the passenger it is the duty of the conductor to give a proper transfer slip, such as should be accepted by the conductor of the car to which the passenger is transferred.

**Same—Duty of Conductor.**

The duty to see that a proper transfer slip is given rests upon the conductor, and not upon the passenger.

**Evidence of Right to Ride.**

The transfer slip is not the sole and exclusive evidence of the passenger's right to ride.

**Examination of Transfer Slip.**

No absolute duty rests upon the passenger to examine the transfer slip when it is delivered to him and see that it is for the proper car and is properly punched. He may rely upon the inference that the conductor has properly done his work and performed the duty imposed upon him.

**Ejection from Car—Duty to Leave—Damages.**

A passenger entered a crowded Interurban car in the city of Minneapolis, paid her fare, and asked for a transfer to the Chicago avenue line. A transfer slip was given her by the conductor as the car approached the transfer point. Without examining the slip, the passenger entered the

1 Reported in 115 N. W. 395.

Chicago avenue car, which was then waiting. Upon presenting the slip it was refused by the conductor of the Chicago avenue car,. and upon her refusal to pay another fare she was ejected from the car. She acted in good faith, and informed the conductor of the circumstances under which she received the slip. *Held* that:

(a) She can maintain an action in tort against the railway company for the damages resulting from her expulsion from the car,· and is not limited to an action for damages for breach of the contract to carry.

(b) The damages recoverable in such cases are such as naturally result from the wrongful act of the conductor in ejecting the passenger, taking into consideration the humiliation suffered, and including such special damages as are alleged and proven.

(c) The right of action is complete when the passenger is ordered to leave the car under circumstances which show that force will be used unless the order is obeyed. Actual force need not be used.

(d) When a passenger is thus ordered to leave a street car, it is his duty to comply with the order quietly and without insisting upon the application of actual force.· If he resists the efforts of the company's agent to eject him, he can recover no additional damages resulting from the use of such force, as is reasonably necessary to accomplish the purpose.

Action in the district court for Hennepin county to recover $1,074 damages for personal injuries sustained by plaintiff in being forcibly ejected from respondent's street car. The case was tried before John Day Smith, J., and a jury which returned a verdict in favor of plaintiff for $100. From an order denying its motion for a judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Jno. W. Arctander* and *Munn & Thygeson,* for appellant.

*Geo. W. Armstrong,* for respondent.

ELLIOTT, J.

This action was brought against the Minneapolis Street Railway Company to recover damages alleged to have been caused by the wrongful and illegal expulsion of the plaintiff from one of its cars. The jury returned a verdict in favor of the plaintiff for $100, and the appeal is from an order denying a motion for judgment for the defendant notwithstanding the verdict or for a new trial.

There was evidence tending to show that on September 5, 1906, the plaintiff entered one of the defendant's cars of the Interurban line

near the Great Western depot on Washington avenue South in the city of Minneapolis. The car was crowded. The conductor collected from her a fare of five cents, which entitled her to be carried as a passenger to the end of any line of cars to which she was entitled to be transferred as provided by the city ordinances. The Interurban line of cars crossed the line known as the Eighth & Central at Hennepin avenue, and this was a regular transfer point from one line to the other. As the Interurban car approached Hennepin avenue, the plaintiff, with a number of other passengers, moved towards the rear end of the car, where the conductor was handing out transfer slips to those who were about to alight. She asked the conductor for a transfer to the Eighth & Central line, and in response to such request he gave her a transfer, which she accepted without examination. She then passed hurriedly across the street and entered a car which was standing at the crossing. The conductor intended to give her a transfer which would entitle her to ride on the car which she entered, but when it was presented on the Eighth & Central car the conductor refused it, and, upon her refusal to pay another fare, ejected her from the car. When she presented the transfer, the conductor examined it and said, "This is no good," after which he tore it up and threw it upon the floor. The plaintiff informed the conductor of the circumstances under which she had received the slip, and demanded that he accept the evidence which she presented and allow her to ride on the car. The defendant's evidence tended to show that the plaintiff presented an old transfer slip, which had been issued on another line on the previous day; but upon the issues of fact the jury found in favor of the plaintiff, and we must assume for the purposes of this appeal that the facts were as stated by the plaintiff and her witnesses.

The record presents the very important and interesting question of the liability of a street railway company for damages for the expulsion by one of its agents of a passenger who in good faith tenders a transfer slip which appears upon its face to be invalid, when such apparent invalidity was caused by the negligent act of another of the company's agents. The frequency with which this question arises in large cities under modern conditions makes it desirable that the subject should receive full and careful consideration.

The right of a street railway company to make reasonable rules to facilitate its business and protect itself from imposition and fraud is questioned by no one. If such rules do not impose unreasonable and unnecessary burdens and restrictions upon the public, and are consistent with the rights of the public to transportation, they will be enforced by the courts. Clark, Accident Law, § 81; Booth, Street Railway Law, § 337; Nellis, Street Surface Railroads, § 8; 4 Elliott, Railroads (2d Ed.) § 1576. It is also conceded that a rule which requires transfer checks is reasonable. But it is the duty of the carrier to furnish the passenger who has paid his legal fare with a correct and valid transfer check. If the conductor, in response to a request, delivers a check which is void or irregular upon its face, and for that reason is refused when presented to another conductor, there is a breach of a valid contract to carry the passenger to his place of destination; and, if the passenger is ejected from the car, the company is liable for the breach of the contract. So far the authorities are practically in accord, but there is great diversity of opinion as to whether an action in tort will lie for the wrongful expulsion. Clark, Accident Law, § 83.

Upon the authority of one line of cases the appellant contends that, when a passenger receives a transfer slip, it is his duty to examine it and see if a mistake has been made by the conductor; that the transfer slip is the sole and conclusive evidence, as between the passenger and the second conductor, of the right of the passenger to ride on the second car; that the conductor can look only to the transfer slip for the evidence of the passenger's right, and may not consider or be governed by any statement or explanation made by the passenger. The result is that, if the transfer is not on its face such as to entitle the passenger to ride on the car, it is the right and duty of the conductor to require the payment of another fare, and upon refusal to eject the passenger from the car. If this view is correct, it necessarily follows that the passenger who is thus ejected has no right of action against the company to recover damages for the wrongful expulsion. On the other hand, the respondent contends, and the trial court in effect held, that a passenger may rightfully rely upon the acts and statements of the first conductor, whose duty it is to give a valid transfer; that it is immaterial that the company's acts are

the acts of different agents; that it is liable for the acts of each agent, and therefore an innocent passenger, who is wrongfully eject- ed, may recover the resulting damages from the company in an action of tort.

1. As the authorities in other jurisdictions are conflicting, they have been examined with care, in order to discover, if possible, a reasonable and practical rule which will protect the legal rights of individuals without seriously interfering with the business of the carriers. Numerous cases upon both sides of the controversy and illustrating its various phases will be found collected in a note to Sprenger v. Tacoma (15 Wash. 660, 47 Pac. 17) in 43 L. R. A. 706. Regardless of minor differences of theory, these cases fall naturally into two groups, one of which places the primary stress upon the right of the passenger, while the other emphasizes the importance of protecting the right of the carrier to make and enforce reasonable rules and regulations for the orderly and profitable conduct of its business.

Probably the leading case of the first group or class is Bradshaw v. South Boston, 135 Mass. 407, 46 Am. 481, in which it was held that a passenger who accepts a wrong transfer from a conductor, and without reading it presents it upon the next car, has no cause of action in tort against the carrier for the damages resulting from his ejection upon his refusal to pay another fare. The duty of the conductor, the representative of the carrier, to give a proper transfer, is treated as a negligible factor. The burden of seeing that the carrier's agent complies with the rule of the company and delivers a proper transfer slip is thrown upon the passenger, without reference to whether, because of defective senses or inadequate knowledge, he is able to read or decipher the characters and designs which commonly appear upon transfer slips. With reference to the claim that the conductor should attach some importance to the statements of the passenger, the court said: "The conductor of a street railway car cannot reasonably be required to take the mere word of a passenger that he is entitled to be carried by reason of having paid a fare to the conductor of another car, or even to receive and decide upon the verbal statements of others as to the fact. The conductor has other duties to perform, and it would often be impossible for him to

ascertain and decide upon the right of the passenger, except in the usual, simple, and direct way."

The court does, however, recognize the fact that a passenger who has been misled by the carelessness of the first conductor is entitled to some consideration. "It is easy to perceive," said Mr. Justice Allen, "that in a moment of irritation or excitement it may be unpleasant for a passenger who has once paid to submit to an additional exaction. But, unless the law holds him to do this, there arises at once a conflict of rights. His right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules, and to conform to reasonable and settled customs and practices, in order to prevent the company from being defrauded; and a forcible collision might ensue. The two supposed rights are in fact inconsistent with each other. If the passenger has an absolute right to be carried, the conductor can have no right to require the production of a ticket or the payment of fare. It is more reasonable to hold that for the time being the passenger must bear the burden which results from his failure to have a proper ticket." That is, the passenger must bear the entire burden resulting from the negligence of one of the agents of the company, in order that another agent of the company may not be embarrassed in his work of enforcing the rules and regulations of the company, which rest upon the assumption that the first agent has done his duty. The absolute right of the passenger, who has paid his fare and has in all ways complied with the terms of his contract, to ride to his destination and be furnished by the company with the evidence necessary to enable him to do so, is regarded as of no greater importance than the duty of an agent of the company to enforce reasonable rules necessary for the ordinary conduct of its business. In Dixon v. New England, 179 Mass. 242, 60 N. E. 581, it is said that "the passenger's right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules." See also Crowley v. Fitchburg, 185 Mass. 279, 70 N. E. 56.

Another leading case is Frederick v. Marquette, 37 Mich. 342, 26 Am. 531. This is not a street railway case; but it is not apparent that any distinction can be made in principle between ordinary railways carrying passengers and street railways. The defendant's ticket agent issued a ticket covering a shorter distance than that for which the

passenger asked and paid. The purchaser failed to read the ticket and, after having ridden the distance which was authorized by the ticket and refused to pay the fare for the rest of the way to his destination, he was ejected from the train. It was held that his only remedy was an action for a breach of contract, and that no action would lie for damages for the tort. The course of the decisions in Michigan has been somewhat uncertain, and it has been generally understood that the doctrine of the Frederick case was abandoned in Hufford v. Grand Rapids, 64 Mich. 631, 31 N. W. 544, 8 Am. St. 859 (s. c. 53 Mich. 118, 18 N. W. 580). In the recent case of Brown v. Rapid, 134 Mich. 591, 96 N. W. 925, the court adhered to its original decision. "Any other rule," said Mr. Justice Montgomery, "would result in unseemly contests between the passenger and conductor, and would put upon the conductor the burden of determining at his peril, by facts not evidenced by the ticket produced, whether the passenger was entitled to ride. This determination was reaffirmed in Mahoney v. Railway Co., 93 Mich. 612, 53 N. W. 793, 18 L. R. A. 335, 32 Am. St. Rep. 528, and Heffron v. Railway Co., 92 Mich. 406, 52 N. W. 802, 16 L. R. A. 345, 31 Am. St. Rep. 601, in an opinion by Mr. Justice Morse, where the case of Hufford v. Railroad Co., 64 Mich. 631, 31 N. W. 544, 8 Am. St. Rep. 859, is distinguished on the ground that in the Hufford case the ticket was one purporting on its face to cover the distance to be traveled by Hufford. This case was again distinguished in the case of Van Dusan v. Railway Co., 97 Mich. 439, 56 N. W. 848, 37 Am. St. Rep. 354, and upon the same identical ground. The rule of law cannot be said to be in doubt in Michigan."

In Monnier v. New York, 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. 619, it was held that a passenger who was unable to purchase a railway ticket before entering a train because of the absence of the ticket agent should pay the extra fare required of a passenger who pays cash on the train instead of presenting a ticket, and that upon his refusal to do so he may be ejected from the train and relegated to an action for damages against the company, based on the negligence of the ticket agent. But Judge Cullen, agreeing on this point with the dissent of Judge Bartlett said: "Each party was bound to know and to determine for itself its legal right, and also that if the plaintiff was within his legal rights he was justified in re-

sisting any attempt to remove him from the cars." In view of these decisions of the Court of Appeals, the other New York cases are useful merely as history or illustrations.

In Parish v. Ulster, 99 App. Div. 10, 90 N. Y. Supp. 1000, it was held that, unless the ticket on its face authorized the person presenting it to ride upon the train, the conductor was justified in ejecting him. In Hanley v. Brooklyn, 110 App. Div. 429, 96 N. Y. Supp. 249, it appeared that the passenger walked the distance of a block along the car line from the place where the transfer by its terms was "good only," and it was held error to submit to the jury the question whether she had substantially violated the reasonable rules of the company. For a similar case, see Percy v. Metropolitan, 58 Mo. App. 75. In Townsend v. New York, 56 N. Y. 295, 15 Am. 419, it appeared that the plaintiff purchased a ticket from Sing Sing to Rhinebeck. At Poughkeepsie he left the car and waited for the next train. He had surrendered his ticket to the conductor on the first train without obtaining any evidence of his right to stop over. He explained the matter to the conductor on the second train, and upon his refusal to pay another fare was ejected from the car. It was held that he could not recover. "I am unable to see," said Mr. Justice Grover, "how the wrongful act of the previous conductor can at all justify the passenger in violating the lawful regulations upon another train." In Nicholson v. Brooklyn, 118 App. Div. 13, 103 N. Y. Supp. 310, following the Monnier case, it was held that a passenger who knows that his transfer has expired cannot recover damages for being ejected from the car, although the first conductor informed him that the transfer would be accepted.

In Norton v. Consolidated, 79 Conn. 109, 63 Atl. 1087, it was held that the transfer slip is the only evidence of the passenger's right which the conductor can properly accept.

In McGhee v. Reynolds, 117 Ala. 413, 23 South. 68, it was held that a conductor has the absolute right to rely upon the language of the ticket, which is the sole and exclusive evidence of the passenger's rights, and, if it is void on its face, the passenger who refuses to pay another fare may properly be ejected from the car. See also Kansas City v. Foster, 134 Ala. 244, 32 South. 773, 92 Am. St. 25. But in Montgomery v. Fitzpatrick (Ala.) 43 South. 136, 9 L. R. A. (N.

103 M.—24

S.) 851, it .was held that an action in tort would lie against the street car company for the negligence of the conductor in so tearing the transfer slip that it could not be used on the next car, which resulted in the ejection of the passenger.

In Kiley v. Chicago, 189 Ill. 384, 59 N. E. 794, 52 L. R. A. 626, 82 Am. St. 460, and in several earlier decisions of the same court, it is held that, when a transfer is refused by the conductor, the passenger must either pay his fare or leave the car, and if he fails to do so he may be ejected, without liability on the part of the company in tort for damages.

In Woods v. Metropolitan, 48 Mo. App. 125, the rule of the company required the conductor to collect "proper ticket or transfer check." A passenger who presented a transfer which had been torn in two pieces was ejected from the car because of the impropriety of the transfer, and it was held that he could not maintain an action for damages resulting from the expulsion. There was some evidence tending to show that persons sometimes picked up torn transfers from the ground where they had been thrown by passengers, and a suspicion of the conductor that this had been done by the person who presented this slip was held to justify the conductor in demanding the payment of another fare. The right of the passenger was not thought of much importance, as compared with the fact that for the conductor to investigate his claim would produce confusion, delay, and dispute incompatible with the business of a common carrier and subversive of the comfort of the general traveling public.

In Texas the right of the company to eject a passenger because the transfer slip which he presented was folded was denied, even though the passenger refused to unfold it at the request of the conductor. El Paso v. Alderete, 36 Tex. Civ. App. 142, 81 S. W. 1246.

Western v. Schaun, 97 Md. 563, 55 Atl. 701, illustrates the palpable injustice which may result from the rule which makes the ticket the conclusive evidence of the passenger's rights. The plaintiff purchased at A. an excursion ticket to B., by the terms of which the conductor on the going trip, in exchange for the original ticket, was required to issue a return ticket so punched as to describe the personal appearance of the passenger, by whom alone it might be used. The conductor took the plaintiff's ticket, and gave her a return ticket, which

he punched so as to describe her as, "light, slight, and young." She was in fact dark, stout, and middle-aged. She placed the return ticket in her pocket without looking at it, and on the return trip presented it to the same conductor, who refused to accept it because she did not answer to the description which he had given of her earlier in the day. She refused to pay another fare and was ejected from the car. There was evidence tending to show that the conductor was acquainted with the passenger; but it was not thought sufficient to carry the issue to the jury. It was conceded that the conduct of the conductor would have been unjustifiable, had he known that the passenger was in fact entitled to ride on the train. The knowledge of the conductor of the actual facts would seem to be of no consequence, if the ticket is the sole and conclusive evidence of the rights of the passenger, as had been held in the earlier case of Western v. Stocksdale, 83 Md. 245, 34 Atl. 880.

Garrison v. United, 97 Md. 347, 55 Atl. 371, 99 Am. St. 452, also well illustrates the sacrifice of individual rights which results from regarding the rules and regulations of the carrier as all-important. The statute required a street railway company to issue transfers "upon the payment of each cash fare, which transfer shall be good at all points of intersection of lines of said railway for a continuous ride." It was held that under this statute the company might properly limit the time within which the transfers might be used, and that it was not required to accept the transfer after the expiration of the time designated by the punch on the slip, although the company did not run its cars frequently enough to permit the use of the transfer within such time. But see Jenkins v. Brooklyn, 29 App. Div. 8, 51 N. Y. Supp. 216; Hanna v. Nassau, 18 App. Div. 137, 45 N. Y. Supp. 437; McMahon v. Third Avenue, 47 N. Y. Super. Ct. 282.

In Perine v. North Jersey, 69 N. J. L. 230, 54 Atl. 799, the ticket had been erroneously punched, and it was held that an action for the expulsion of the passenger would lie, unless the passenger by his own carelessness had contributed to the production of the situation. This makes each case turn upon the question of fact. In Shelton v. Erie (N. J. Err. & App.) 66 Atl. 403, 9 L. R. A. (N. S.) 727, it was held that a railway ticket, in so far as it speaks at all, is conclusive

as to the rights of the passenger by whom it is presented. See Hayter v. Brunswick, 66 N. J. L. 575, 49 Atl. 714.

In Rolfs v. Atchison, 66 Kan. 272, 71 Pac. 526, where a passenger presented a mileage book which by its terms had expired, the court said that the conductor could not be required to hear, weigh, and verify his story in opposition to the language of the ticket.

In Little Rock v. Goerner, 80 Ark. 158, 95 S. W. 1007, 7 L. R. A. (N. S.) 97, it is held that a passenger who is ejected from a street car on presenting an invalid transfer check, given him by a former conductor, and refusing to pay another fare, is restricted to an action for damages for a breach of the contract.

In Peabody v. Oregon, 21 Ore. 121, 26 Pac. 1053, 12 L. R. A. 823, it appeared that the plaintiff paid his fare to a designated station to the conductor, who gave him a drawback check on the face of which appeared the words, "Good for this day and train only." At the time of paying his fare, and before receiving the check, he asked the conductor if he might stop off at a certain station, and was informed that he might do so. The conductor of the next train refused to accept the check, and it was held that it was the duty of the passenger to pay his fare or quietly leave the train when requested to do so, and resort to his appropriate remedy for the damages he had sustained.

In McKay v. Ohio, 34 W. Va. 65, 11 S. E. 737, 9 L. R. A. 132, 26 Am. St. 913, it was held that if a passenger pays a railway agent fare for a certain trip, and by the mistake of the agent is given a ticket which does not answer for that trip, but for one in the opposite direction, and the conductor refuses to recognize the ticket and demands fare, which the passenger fails to pay, the ejection of the passenger from the train without unnecessary force is not a ground for action against the company. But see Trice v. Chesapeake, 40 W. Va. 271, 21 S. E. 1022.

In Virginia v. Hill, 105 Va. 729, 54 S. E. 872, 6 L. R. A. (N. S.) 899, a party who called for a ticket to A. was by a mistake of the agent given a ticket to B., an intermediate station. He neglected to examine the ticket, and after passing B. was ejected from the car. It was held that the action of the conductor was not wrongful, and that no action in tort could be maintained, unless undue force or violence were used.

In Yorton v. Milwaukee, 54 Wis. 234, 11 N. W. 482, 41 Am. 23, a party bought a ticket for A., and while on the train asked the conductor for a stop-over at B. Instead of giving him a proper ticket, the conductor gave him an ordinary train check, which the conductor of the next train refused to accept. The court said that the conductor "was perfectly justifiable in ejecting the plaintiff from his train, when plaintiff had no proper voucher, produced no sufficient evidence of his right to ride thereon, and refused to pay fare, and he himself was ignorant of the transaction between the plaintiff and the [former] conductor."

In Pouilin v. Canadian Pacific Ry. Co., 52 Fed. 197, 3 C. C. A. 23, 17 L. R. A. 800, it is held that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company, and that the reason for the rule is found in the impossibility of operating railways on any other principle, with due regard to the convenience of the rest of the traveling public or the proper security of the company in collecting its fares.

2. It will thus be seen that in a number of jurisdictions the decisions sustain the appellant's position and would require a reversal of the order of the trial court. As between the carrier and the passenger, the reasons assigned by these decisions seem to us entirely inadequate and unconvincing. There is, however, some force in the claim that the interests of the general traveling public require the subordination of the strict rights of the passenger, in order to avoid unseemly controversies and possible breaches of the peace. But we are not in sympathy with any rule which necessarily requires the individual to submit to imposition and abandon his legal rights, unless there is some almost overwhelming necessity therefor in public policy. The recognition of the right to maintain an action in tort for damages resulting from the wrongful expulsion of a passenger from a car does not imply a right in the passenger to forcibly resist the effort to expel him. That is a matter which relates to another phase of the question, to be considered hereafter. It is apparent that the tendency at present is towards the recognition of the right to sue in tort. As said by a recent writer: "The weight of authority in the courts, state and national, however, now is to the effect that the passenger has a right

to rely upon the acts and statements of the ticket agents or conductors, and that if expelled from the train when he has acted in good faith and is without fault, the carrier will be liable in damages for such expulsion, whether the action is brought for a breach of the contract or solely for the tort of the conductor." Moore, Carriers, p. 743. To the same effect, see 6 Cyc. 557; note to 4 Street Ry. Rep. 234; 3 Wood, R. § 349. Contra: 4 Elliott, R. (2d Ed.) §§ 1594, 1602.

The following cases illustrate the application of this general rule and state the reasons upon which it rests: In New York, Lake Erie & W. R. Co. v. Winter's Admr., 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71, it appeared that the plaintiff purchased a ticket to A., and at the time informed the agent that he wished to stop over at an intermediate station. The ticket agent instructed him to speak to the conductor about the matter. Before reaching the station where he desired to stop, the passenger informed the conductor that he wished to stop over; and the conductor, instead of giving him proper evidence of his right, merely punched his ticket and returned it to him, with the statement that the conductor on the next train would accept it. The punched ticket was tendered on the next train, with a statement of what had occurred; but the conductor refused to accept it, and upon declining to pay another fare the passenger was required to leave the train. In an action to recover damages it was held that the passenger was rightfully on the train, and that the company was liable in tort for damages resulting from the act of the conductor in ejecting him. "If he was rightfully on the train as a passenger," said Mr. Justice Lamar, "he had the right to refuse to be ejected from it, and to make a sufficient resistance to being put off to denote that he was being removed by compulsion and against his will; and the fact that under such circumstances he was put off the train was of itself a good cause of action against the company, irrespective of any physical injury he may have received at that time or which was caused thereby." See 12 Rose's Notes on U. S. Reports, p. 110.

The claim that the ticket is the only evidence of the passenger's right to ride was carefully considered in Burnham v. Grand Trunk, 63 Me. 298, 18 Am. 220. The plaintiff purchased a ticket to N., which bore the indorsement, "Good for this day only." In the absence of any other evidence, this would have been proof of a contract for trans-

portation on a train which went through on that day. But the plaintiff proved a different contract made with the ticket agent at the time of the purchase of the ticket. In accordance with this oral contract he stopped over at an intermediate station and took a train the next day, from which he was ejected because of the recital on the face of the ticket. He recovered damages for the wrongful act of the conductor in an action for damages. In reference to the claim that the ticket is the only admissible evidence in the contract the court said: "But it is seldom, if ever, that the ticket embodies all the elements of the contract. The running of the trains, as well as all reasonable rules prescribing the manner and facilitating the business of carrying passengers, certainly so far as known, become a part of the contract and may be proved by either party, although not indorsed upon the ticket. Sears v. Eastern R. R. Co., 14 Allen, 433. In the case at bar the inquiry presented is: What is the contract? Not whether the rule of the company, or the contract expressed by the ticket, is reasonable. No objection is made to the authority of the company to make such a rule or contract. But did the plaintiff have such a knowledge of the rule as to make it binding upon him, or did he in any way assent to it as a part of the contract for his passage from South Paris to Northumberland? As either party may prove terms of the contract not expressed upon the ticket, so either party may prove the acceptance, or rejection, or waiver of any terms indorsed thereon. The ticket is not a written contract signed by the parties. It is at most evidence of some existing contract for a passage between two places named and that the holder has paid the fare demanded. * * * The real contract between the plaintiff and the ticket agent was made before the ticket was seen. The plaintiff paid his money upon the statement of the agent, and not upon any indorsement upon the ticket. He took the ticket, not as expressing a contract, but as proof of the contract he had already made with the agent. He had neither seen nor assented to the indorsement, nor was he asked to assent to it. As between the plaintiff and agent, the contract was definite, with no misunderstanding or suggestion of it." It was therefore held that the representations by the agent could be shown, and that after being informed of the facts the conductor had no right to eject the passenger.

The notion that the carrier can substantially relieve himself from

responsibility for the wrongful act of one of its agents by asserting the duty of another of its agents to enforce a reasonable rule for the conduct of its general business was repudiated in Sloane v. Southern, 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193. It there appeared that the plaintiff purchased a ticket from North Pomona to San Diego. Before reaching San Bernadino, where it was necessary to change cars, the conductor took up the ticket without giving the passenger any evidence of her right to continue the trip on the other train. The next conductor ejected her, because she had no ticket, and it was held that she might recover damages therefor. "If the conductor who took up, the ticket," said the court, "had himself, at a subsequent point in the trip, excluded her for failure to exhibit it, the liability of the defendant would not be questioned. Its liability is the same, notwithstanding for its own convenience it has intrusted the management of its trains to different conductors. Muckle v. Rochester Ry. Co., 79 Hun, 32, 29 N. Y. Supp. 732. The plaintiff was not called upon to question the right of the first conductor in taking up her ticket, and it was the duty of the defendant to see that she was not thereby deprived of her right to a passage upon its cars."

In Head v. Georgia, 79 Ga. 358, 7 S. E. 217, 11 Am. St. 434, it was held that if the purchaser of a round-trip ticket, after paying for and receiving it, performs all the stipulations of the contract on his part, or offers to do so, the company is bound to recognize and honor the ticket when and whenever duly presented, notwithstanding any omission of its agent in signing or stamping the same.

In Hornesby v. Georgia, 120 Ga. 913, 48 S. E. 339, it was held that a person who fails to comply with the rule which requires a passenger to present a valid transfer check may recover damages for being ejected from the car, upon proving that his failure to have a valid check was due to a fault of an employee of the company who had authority to act for it in such matters.

So in Louisville v. Gaines, 99 Ky. 411, 36 S. W. 174, 59 Am. St. 465, it was held that, while the conductor had the right to rely upon the ticket—that is, as between himself and his employer—the carrier was nevertheless liable in ejecting a passenger who had been given a ticket other than that for which he had asked and paid. "The right to bring such an action," said the court, "is evident. If the fault [was

that of] the agent of the company, the remedy by an action for tort, where the passenger is forcibly ejected, ought not to be questioned."

In Hot Springs v. Deloney, 65 Ark. 177, 45 S. W. 351, 67 Am. St. 913, the right of a passenger who has been given a wrong ticket by an agent of the carrier to recover damages for being ejected from the car is sustained. But see Little Rock v. Goerner, 80 Ark. 158, 95 S. W. 1007, 7 L. R. A. (N. S.) 97.

In Pennsylvania a passenger who in good faith presented a return slip wrongfully given him by the conductor was allowed to recover damages for his exclusion from the car. See also Little Rock v. Winn, 75 Ark. 529, 87 S. W. 1025; Baltimore v. Bambrey (Pa.) 16 Atl. 67. The same conclusion was reached in Laird v. Pittsburg, 166 Pa. St. 4, 31 Atl. 51, where a passenger on a street car made a timely request for a transfer, but which was not given him until he was about to leave the car. On the margin of the transfer slip the hour of 9 a. m. was punched. This was correct; but the conductor also punched the hour of 7:30 a. m., and the second conductor refused to accept the transfer and ejected the passenger, after he had stated the facts and refused to pay another fare. See also Eddy v. Syracuse, 50 App. Div. 109, 63 N. Y. Supp. 645.

There is ample authority for the rule that the burden of inspecting the transfer slip and seeing that the conductor has properly punched it cannot be thrown upon the passenger. In Gulf v. Copeland, 17 Tex. Civ. App. 55, 42 S. W. 239, it is held that a passenger may, in the absence of notice to the contrary, assume that the carrier has furnished him with a ticket which states the terms of the contract correctly, and he is not bound to inspect it and see that the agent has performed his duty. "This court," said Chief Justice Fisher, "has heretofore in several cases (notably Railway Co. v. Rather, 3 Tex. Civ. App. 72, 21 Southwestern Reporter, 957, and Railway Co. v. Halbrook, 12 Tex. Civ. App. 475, 33 Southwestern Reporter, 1029) affirmed the doctrine that the ticket or pass does not in all instances furnish the exclusive right to (sic) the passenger to transportation, and that under certain circumstances the contract as actually entered into between the passenger and the agent of the carrier may be looked to in order to ascertain the rights of the passenger." In O'Rourke v. Street, 103 Tenn. 124, 52 S. W. 872, 46 L. R. A. 614, 76 Am. St.

639, it appeared that the first conductor punched the passenger's ticket erroneously, so that it appeared that the time limit had expired. It was held that the face of the ticket was not the sole criterion of the passenger's right to ride, and that a condition in a transfer slip that the passenger agrees to pay the regular fare charged if there is a controversy with the conductor about the check, and then apply to the office of the company for the return of his money, is void for unreasonableness, as is also a condition printed on the slip that the passenger will examine time, date, and direction, and see that they are correct. In Memphis v. Graves, 110 Tenn. 232, 75 S. W. 729, 100 Am. St. 803, the court said: "The tickets or tokens are prepared by the company. They contain more or less of printed and other directions. Some passengers cannot read; others are children. None of them have the time or opportunity in the rush of travel to scrutinize the ticket, and in many instances, if they could, they could not understand the devices used by the company. The passenger has the right to presume the conductor has given him a proper ticket, and if he makes a mistake it is the fault of the company, for which it is liable; and if the passenger in good faith accepts the ticket he is not bound to stop and scrutinize it to see that no mistake has been made."

The same general conclusion was reached in the well-considered case of Indianapolis v. Wilson, 161 Ind. 153, 66 N. E. 950, 67 N. E. 993, 100 Am. St. 261. The plaintiff took passage on one of the defendant's street cars, paid his fare, and requested the conductor to give him a transfer ticket to a certain other line. The conductor gave him a ticket, and upon arriving at the transfer station the passenger boarded a car of the line to which he had asked to be transferred. The conductor of the car refused to accept the ticket, because it called for a transfer to another line of the defendant's road. Regardless of explanation, the passenger was ejected from the car and recovered damages therefor in an action in tort. "The duty of inspection, under the circumstances," said the court, "the law did not exact of him; for, in the absence of any notice to the contrary, he had the right to presume that appellant's conductor and agent had correctly discharged his duty in punching the ticket and thereby indicating the transfer over the line in accordance with his request. Ap-

pellee had nothing to do with the preparation of the ticket; for appellant seems to have prescribed the form and contents thereof, and also the method or means to be employed to indicate or point out thereon the line of its railway over which a transferee was entitled to be carried. The many words, figures, spaces, and abbreviations which the ticket furnished by appellant to appellee, as exhibited by the record, contained, would prima facie be unintelligible to many persons, and certainly it would be an unreasonable imposition to require of a passenger, upon receiving one of these tickets, the duty to inspect the same in order to discover if the conductor had made a mistake in the performance of his duty. Appellee, a mere passenger, under the circumstances was not, in the eye of the law, either presumed or bound to know the meaning of the various figures, abbreviations, punch marks, and other mystic symbols which the transfer ticket in question contained. These possibly could only be correctly interpreted or read in the light of the rules and regulations adopted by appellant company for the guidance of its conductors and employees. Neither was he presumed to know or required to take notice of these rules and regulations made by appellant for the aforesaid purpose."

The supreme court of Ohio, in Cleveland v. Conner, 74 Oh. St. 225, 78 N. E. 376, recognizes the right of a passenger to recover damages in an action in tort for wrongful ejection, but imposes upon him the duty of exercising ordinary care in receiving and making use of the transfer slip. In considering the grounds upon which the right of action rests, the court said: "This is not a controversy between the master and the servant, nor between the passenger and the conductor, nor yet between the carrier and the passenger solely in regard to the act of the carrier's servants in ejecting the passenger from the car; but it is an action against the carrier for the wrongful and negligent act of giving the transfer as the proximate cause of the resulting injury, which was the refusal to carry the plaintiff as he had the right to be carried and putting him off the car. Since the complaint is against the company itself, it can avail the defendant nothing to show that one of its servants obeyed a reasonable rule of the defendant in putting the plaintiff off of the defendant's car, when the defendant itself through the agency of another servant created the

conditions which caused him to be put off. * * * It is as though a single individual had first agreed to carry the plaintiff by the St. Clair street line, and by mistake had given a ticket over the Woodland avenue line, and then, when he came to take up the ticket, taking advantage of his own mistake or wrong, refused to honor it and forcibly ejected the plaintiff. The defendant * * * is the actor throughout this transaction, although it acted through different agencies, in giving and refusing to accept the transfer and ejecting the plaintiff. It is therefore not sound reasoning to argue that the company is not liable in tort for refusal to carry the plaintiff and ejecting him from the car upon the theory that the conductor who removed the passenger from the car under a rule of the company is personally without blame in the matter."

See also Georgia v. Baker, 125 Ga. 562, 54 S. E. 639, 7 L. R. A. (N. S.) 103, 114 Am. St. 246; Lawshe v. Tacoma, 29 Wash. 681, 70 Pac. 118, 59 L. R. A. 350; Moon v. Interurban (Sup.) 85 N. Y. Supp. 363; Eddy v. Syracuse, 50 App. Div. 109, 63 N. Y. Supp. 645; Jacobs v. Third Avenue, 71 App. Div. 199, 75 N. Y. Supp. 679; Baggett v. Baltimore, 3 App. D. C. 522; Ellsworth v. Chicago, 95 Iowa, 98, 63 N. W. 584, 29 L. R. A. 173; Carpenter v. Washington, 3 Mackey (D. C.) 225; Kansas City v. Riley, 68 Miss. 765, 9 South. 443, 13 L. R. A. 38, 24 Am. St. 309.

3. Certain phases of the general question have already been determined by this court. In Pine v. St. Paul City Ry. Co., 50 Minn. 144, 52 N. W. 392, 16 L. R. A. 347, the manifestly proper rule was recognized that, if a passenger accepts a transfer plainly marked for a particular line, he is not entitled to take a car upon another line. The case involved no question of mistake or misconduct of an agent of the company by which the passenger was misled. He asked for a transfer over a certain line, and was given one which, although general in its terms, entitled the passenger to ride upon the car on which he attempted to use it. His expulsion was therefore wrongful, and he recovered damages in an action in tort.

In Appleby v. St. Paul City Ry. Co., 54 Minn. 169, 55 N. W. 1117, 40 Am. St. 308, a passenger paid his fare and received a transfer check which entitled him to continue his journey by the next con-

necting car on another line. He took the proper, car after being transferred, and the conductor took up his transfer check. After the car had gone a short distance it was taken off. The conductor disappeared; but the driver of the car told the passengers to take the next car, which was then approaching on the same line. But the conductor on that car, although informed of the facts by the plaintiff, demanded another fare, and, this being refused, the passenger was ejected. In an action for damages for the expulsion, it was held that on the whole case the plaintiff was entitled to recover. He had done all that was required of him. It was the duty of the company under the circumstances to give the passenger such directions in reference to its system or course of conduct as was reasonably necessary to enable him to pursue his journey. When it became apparent that the car was being taken off without previous notice, the passenger had a right to expect information of some one as to how he was to proceed on his journey. Upon being informed that he was to take the next car he was justified in acting upon that information. The case was distinguished from one where a person enters a car knowing that he is without evidence of his right of passage as required by the reasonable regulations of the carrier. The right of action did not rest upon the bare fact of expulsion by the conductor, but upon the conduct or neglect of the carrier which resulted in and included the expulsion. The cause of action set forth in the complaint covered the whole transaction, and it was held that upon such facts the company had neglected its duty towards the passenger to his injury, and he could recover damages in an action in tort. The court said: "Even though the conductor, in ejecting the plaintiff, may have done only what was apparently (to him) his duty * * * towards the passenger it had justified him in assuming to continue his journey on a car from which the conductor, in accordance with the regulations of the defendant, should expel him for nonpayment of fare, * * * and under the circumstances the jury might have reasonably found that the defendant's conduct, through its agents, had justified the plaintiff in taking the car."

Krueger v. Chicago, St. P., M. & O. Ry. Co., 68 Minn. 445, 71

N. W. 683, 64 Am. St. 487, is relied upon by appellant as committing the court to the doctrine for which it contends. This reliance is possibly justified by statements made in the opinion, but not by the decision itself. The plaintiff there purchased a railway mileage book containing two thousand miles of transportation. The date of the issue of the book was stamped somewhat illegibly thereon, and by mistake of the agent the book was punched so as to show that it expired on the day that it was issued, instead of one year later, as was intended by both parties. The purchaser signed a contract, which was printed on the cover of the book, which stated that the ticket was "void for passage after date punched in margin." The conductor to whom the ticket was presented refused to accept it, and upon the refusal of the passenger to pay fare he was ejected from the train. In an action for damages for the wrong, he recovered a verdict, which was sustained on appeal. In answer to the contention that, where a passenger presents a ticket not apparently valid on its face, it is the duty of the conductor to refuse to accept it, and to eject the passenger from the train if he refuses to pay a fare, and that the passenger is bound to know that the rules of the company require such action on the part of the conductor and to abide thereby, the court said: "So far as it goes, the proper rule on this point is stated in Freeman's note to Com. v. Power, 7 Metc. (Mass.) 596, 41 Am. Dec. 475 * * * but so far as this rule refuses to the passenger damages for being forcibly ejected, it does not apply when, from the circumstances appearing on the face of the ticket and the surrounding circumstances known to the conductor, it is probable that a mistake has been made by the company in issuing the ticket, and this probability is so strong that the conductor should, under the circumstances, investigate further before ejecting the passenger. The statements of the passenger need not be accepted in such a case, except so far as they call the conductor's attention to facts and circumstances which he can then and there observe."

There was conflicting evidence as to whether the date of the issue of the ticket was legible, and it was said that, if there was nothing on the face of the ticket to put the conductor on inquiry, he was justi-

fied in ejecting the passenger. This was a statement of that which would defeat a recovery. What was said in support of the theory upon which the conclusion rests is dicta, and, in so far as it is inconsistent with what is here held, does not meet with our approval. The case sustained the right of a passenger, who was ejected from the car because his ticket did not on its face entitle him to ride, to maintain an action in tort for damages when the circumstances were such that the conductor should as a reasonable man have paid some attention to his claim that the defect in the ticket was the result of a mistake on the part of another agent of the carrier. The decision is inconsistent with the doctrine that the ticket is the sole and conclusive evidence of the passenger's right to ride, as it recognizes the duty of the conductor to consider extraneous facts and circumstances, and requires him to reach the proper conclusion thereon upon the peril of rendering the carrier responsible for the damages resulting from the expulsion of the passenger, who is entitled, under his actual contract with the carrier, to ride on the car. The decision is also adverse to the rule which casts upon the passenger the burden of inspecting the ticket in order to see whether it is in proper form.

4. The result of an examination of the authorities and consideration of the reasons upon which they rest has convinced us that public policy, as well as the necessity for protecting the rights of individuals, requires us to hold that a transfer slip is not the sole and exclusive evidence of the right of the holder to ride on the street car, and that the law does not impose upon the passenger the absolute duty to examine the slip when it is received and see that it is correct. The contract between the carrier and the passenger is complete when the passenger pays his fare. He is then entitled to be carried to the end of the line of cars to which the city ordinance entitles him to be transferred. His rights as a passenger are measured by the statutes, ordinances, and decisions of the courts; that is, by the law, and not by any written contract which exists between him and the carrier. When he reaches the place where he desires, and is entitled, to be transferred to another car, it is the duty of the carrier to furnish him with proper evidence, for presentation to the conductor of the next car, of his right to ride.

The ordinance of the city of Minneapolis, approved April 11, 1892, provides that the "street railway company shall issue transfer checks at the junction of its street railway lines in said city at Washington and Hennepin avenues, in said city, to any passenger on any of said lines who shall pay one full fare, which transfer check shall (subject to certain provisions not here material) entitle the passenger so receiving the same to a continuous passage on either of said connecting lines." By section 2 of the ordinance it is provided that the company shall forfeit to the city the sum of $50 for each time it refuses so to issue a transfer check and for each time it refuses to honor the same by carrying any passenger so entitled thereto on any connecting lines. The ordinance thus makes it the duty of the street railway company to furnish a proper transfer, and this duty cannot be shifted by it to the passenger by any rule or principle which requires the passenger to see that the transfer is properly made out. The check is nothing more than a token, which the passenger is instructed by the carrier to take to the next conductor. It is not a contract between the company and the passenger, by which the company is bound to carry the passenger the remainder of his journey, subject to conditions printed thereon. The contract is made when the fare is paid. It is then complete. The ordinance determines the right of the passenger to the transfer, and prescribes when and where it must be issued and used. Nothing printed on the transfer check which is contrary to the provisions of the ordinance can have any force and effect.

In the present instance the plaintiff claimed that she received a check from the conductor of the Interurban line as she was leaving the car at the intersection of Washington and Hennepin avenues. The company claimed that the transfer check which she presented on the Eighth & Chicago car had not been issued by a conductor on an Interurban car, because it was different in color and printed matter from the checks used on that line; but the jury found that the plaintiff had received the check which she actually presented from the conductor of the Interurban car. Assuming this to be true, as we must for the purposes of this case, it is evident that the first conductor made a mistake and gave her the wrong check. The original check,

unfortunately, was not preserved. The plaintiff testified that it was destroyed by the conductor. In view of the character of the transfer slip, it would be unreasonable to impose upon the passenger the duty of checking up the work of the conductor.

A glance at the sample slip introduced in evidence, and inserted herein, suggests that such examination, by many who ride upon the street cars, would be utterly useless. It is admirably adapted to the use of the carrier and its agents. The various colors, fine print, and tabulated figures render it confusing and unintelligible to many persons. The significance of the figures is not explained. It is left to inference. There is no explanatory printed matter at the head of the columns of figures. That the figures refer to time is left to inference. Persons who use the transfers daily doubtless understand them, but such understanding is more the result of experience than information acquired from the slip. It is given to all kinds of travelers—the old and the young, the educated and the ignorant, the blind, and the visitor, to whom transfers are sometimes a novelty. A person trained in the study of statistical tables and tabulated data can, of course, ascertain within a reasonable time whether the slip entitles him to ride on the desired car; but an ordinary person of fair intelligence, good eyes, and a reasonable amount of patience requires more leisure for the purpose than is available during the hurried emptying of an overcrowded car, with a conductor standing on the rear platform and passing out the slips to all comers. It is the duty

103 M.—25

of the conductor, not of the passenger, to see that a proper transfer slip is issued.

The wrong which resulted in the expulsion of the plaintiff from the car was that of an agent and representative of the carrier. The obligation imposed upon the carrier cannot be avoided by the division of labor and duties between the different agents of the carrier. There is unity of obligation, and the act of each conductor is the act of the corporation, from whom the duty is owing to the passenger. When there is a breach of that duty on the part of one agent, which results in a wrong to a passenger by another agent, of the company, the company is liable for the results, although the latter agent may have been acting in good faith, under instructions received from his employer. The fear expressed in many of the decisions that such a rule will subject the carrier to imposition has very little foundation. There can be no recovery of damages in any case unless the passenger is able to prove that he was entitled to a good transfer and was deprived of it by the negligent act of the first conductor. The rule which we adopt has been in force in many states for years, and we are yet to learn that any serious prejudice has resulted therefrom to carriers of passengers.

5. It does not follow that, because the carrier has not the legal right to eject the passenger, the passenger has the right to use force to prevent himself from being ejected. Many of the decisions which deny to the wronged passenger a right of action for the expulsion rest upon the assumed necessity of subordinating the rights of the individual to those of the general traveling public, on the assumption that a contrary rule would result in unseemly physical encounters and breaches of the peace. But this does not necessarily follow. When a passenger is wrongfully ordered to leave the car, his right of action is complete. He must go quietly, and not await the application of actual force. The constructive force involved in the order of the representative of the carrier under circumstances which show an intention to enforce the order is all that is required. His cause of action is then complete, and if he engages in any contest of force with the conductor he does so at his own peril, and can recover no damages for injuries received or humiliation suffered by reason of his insistence upon the use of actual force. The damages which he is entitled

to recover for the wrongful expulsion are such only as result from being required to leave the car, and cannot be enhanced by his own conduct, which results in an assault, with its resulting injuries and humiliation. This is but the application of the well-established rule that it is the duty of a person who finds that he has been wronged to use all reasonable means to arrest the loss. Gniadck v. Northwestern Imp. & Boom Co., 73 Minn. 87, 75 N. W. 894; 1 Joyce, Dam. § 194; 13 Cyc. 71; 1 Sedgwick, Dam. §§ 201, 202.

It is not claimed that the damages awarded in this case are excessive, and there is no assignment of error based upon any instructions with reference to the measure of damages. Under the rule which requires the passenger to leave the car upon demand without resistance, it is probable that the plaintiff would not have recovered so large a verdict; but as it is not greatly, if at all, in excess of what the jury would have been entitled to award, we will not interfere with it.

The order of the trial court is affirmed.